W. O. PHELAN, Appellant, v. R. E. PHELAN, Appellee.
—309 S. W. (2d) 387.

Western Division, Jackson. December 20, 1956.

Petition for Certiorari denied by Supreme Court April 1, 1957.

378 

380

Holmes & Holmes, W. R. Landrum, Trenton, for appellant.

Harrell & Nowell, M. H. Holmes, Jr., Trenton, for appellee.

CARNEY, J. The appellant, W. O. Phelan, appeals from a decree of the Chancery Court of Gibson County allowing his brother, the defendant and appellee, R. E. Phelan, credit by way of set-off against a $4,000 note executed by the defendant, R. E. Phelan, to W. O. Phelan on April 10, 1954. The two items of set-off allowed by the Chancellor totaled $2976.88.

The appellant, W. O. Phelan, insisted in the trial below that the $4,000 note which he received from his brother, R. E. Phelan, represented a final settlement between him and his brother of all financial matters between them and in addition, insisted that if the $4,000 note did not represent a final settlement that under the circumstances the defendant, R. E. Phelan, was estopped to claim set-off against said note.

The $4,000 note was executed and delivered by R. E. Phelan on April 10, 1954, to his brother, W. O. Phelan.

The note was made due and payable on or before September 15, 1954. It bore no interest and a restriction written in made it not negotiable or transferable.

On the same date, W. O. Phelan executed and delivered to R. E. Phelan a warranty deed in which he conveyed his one-half interest in 87 acres of land to R. E. Phelan and wife, Mary Phelan, in fee simple. This deed recited that it was made in consideration of $4,500 cash and also recited that it conveyed all claims for rent or income from said land. The deed made no mention of the $4,000 note above referred to and the $4,000 note made no reference to the transfer of the real estate but they were both part of the same transaction.

When the $4,000 note became due and payable on September 15, 1954, the defendant, R. E. Phelan informed his brother, W. O. Phelan, that he was claiming set-off against said note for two items of indebtedness which he claimed to be due and owing by W. O. Phelan to him.

The first item on which he claimed set-off was a promissory note dated September ——, 1948, payable on demand to R. E. Phelan in the principal amount of $1,976 and drawing interest at 6% per annum. His answer to the bill averred that interest had accumulated to the amount of $750.88. This note was secured by the right and title on a 1948 Ford convertible automobile. The car has been long since disposed of and is not involved in this litigation.

The second item of set-off which was claimed was a loan of $250 which Mr. R. E. Phelan alleged that he made in June, 1953, to W. O. Phelan while the parties were on vacation in Florida. No note was given for this $250 but Mr. R. E. Phelan saved the cancelled check.

W. O. Phelan filed suit for collection of his note on October 12, 1954, in the Chancery Court of Gibson County. His original bill expressly averred that the defendant was entitled to a set-off of $350. This $350 item represented a new loan of $350 made by W. O. Phelan from R. E. Phelan sometime between April, 1954, when the $4,000 note was made and September 15, 1954, when the $4,000 note became due and payable. The complainant, W. O. Phelan, wanted to lend or pay a third brother, Finis Phelan, $600. He had only $250 in cash and on the suggestion of Finis Phelan, got the remaining $350 from R. E. Phelan and for this amount W. O. Phelan signed and delivered a $350 note to R. E. Phelan. It was understood by both parties that this $350 would be deducted from the payment of the $4,000 note.

The defendant, R. E. Phelan, filed answer setting up the $1,976 automobile note and the $250 loan and claimed set-off for them.

A trial was had on oral testimony before a jury. At the conclusion of all the proof the Chancellor overruled the motion of complainant, W. O. Phelan, to discharge the jury and render a decree in favor of the complainant. Thereupon the Chancellor submitted five issues of fact to the jury with instructions to the jury to indicate in their report how many jurors voted in favor or against each proposition of fact. The jury found all five issues of fact unanimously in favor of the defendant, R. E. Phelan.

The issues of fact and the findings of the jury thereon are as follows:

"I. Did W. O. Phelan, on or about September or October, 1948, execute his promissory note payable to

R. E. Phelan, in the sum of One Thousand Nine Hundred Seventy-Six Dollars ($1,976), bearing interest from date and providing Attorney's fees and due on demand?

Answer: Yes — 12 ''

''II. Did the complainant, W. O. Phelan, borrow the sum of Two Hundred Fifty Dollars ($250) from the defendant, R. E. Phelan, on or about June 1953, or was said amount a gift?

Answer: Loan 12 ''

''III. Was there a complete settlement of all matters between the complainant and the defendant, in April, 1954? (Answer 'Yes' or 'No')

Answer: No 12 ''

''IV. Did W. O. Phelan understand that the April 1954 settlement was a complete settlement? (Answer 'Yes' or 'No')

Answer: No 12 ''

''V. Did R. E. Phelan understand that the April 1954 settlement was a complete settlement? (Answer 'Yes' or 'No')

Answer: No 12 ''

After the report of the jury, the complainant moved first, that the findings be set aside and that the complainant be granted a new trial which was overruled by the Chancellor.

Next, the complainant moved for a decree in his favor notwithstanding the findings and facts of the jury which was also overruled by the Chancellor.

Next, the complainant filed written application for certain additional findings of fact by the Chancellor which the Chancellor refused to determine. Thereupon the Chancellor allowed the set-offs in controversy and rendered judgment in favor of the complainant for only $748.11 which amount the defendant, R. E. Phelan had already tendered into court.

The complainant executed, prayed and was granted an appeal to the Court of Appeals at Jackson in said decree.

After the entry of the decree by the Chancellor on the verdict of the jury as above set out, evidently the Chancellor reconsidered and decided to make a finding of fact in response to the written request by the complainant, W. O. Phelan, and the findings of the Chancellor in this respect are as follows:

"This matter is before the Court on a request by the Complainant W. O. Phelan, for a written finding of fact. The request set out in detail the particular and specific requests that the Court is called upon to determine, which are as follows:

"1. Whether or not the defendant, R. E. Phelan, intentionally remained silent about any claim for any money due him by complainant at the time of the April, 1954 settlement.

"2. Whether or not the defendant, R. E. Phelan, knew or thought that had he not remained silent, and had insisted on deducting the amount claimed to be due him, he could not have obtained the deed to complainant's interest in the real estate.

"3. Whether or not the defendant, R. E. Phelan, paid complainant the sum of $4,500 in cash and

executed and delivered his promissory note in the principal sum of $4,000 because he knew and he thought he could not have obtained a deed to his brother's interest in the real estate otherwise.

"(4) Whether or not the defendant, R. E. Phelan, by his intentional silence intended to deceive and mislead complainant into making a settlement he would not otherwise have made.

"(5) Whether or not the defendant, R. E. Phelan, inserted or had inserted the words 'non-negotiable and non-transferable' in the $4,000 note for the sole purpose of avoiding payment in full.

"(6) Whether or not the defendant, R. E. Phelan, in obtaining the deed and executing the note without mentioning any claim for money due him intended to to deceive, mislead or defraud the complainant.

"7. Whether or not the defendant, R. E. Phelan, has come into the Court with clean hands.

"As to the first request above set out, the Court finds from the proof that the defendant, R. E. Phelan, did remain silent, but the Court does not find that his silence was premeditated intentionally, the Court being of the opinion that the proof shows that the purchase of the automobile in question and the purchase of the farm are two separate and distinct transactions and no relationship was established by the proof between the two.

"As to the second request set out above, the Court has no way to determine, other than from the proof, what the defendant knew or thought as to the result of his remaining silent, and from his testimony the

Court does find that it was his opinion that it was not advisable for him, the defendant, to insist on the payment of the automobile note at the time he was closing the transaction of the purchase of the farm.

"As to the third item set out above, the Court reiterates that the proof shows that the purchase of the automobile and the purchase of the farm were separate and distinct business transactions, and that for this reason the defendant completed the entire transaction as to the purchase of the farm and made no reference to the purchase of the automobile, and the proof shows that he was of the opinion that to bring the transaction of the automobile into the purchase of the farm, might have prevented him from purchasing the farm.

"As to the fourth item, the Court is of the opinion that the proof fails to show that the defendant, by his silence, intended to deceive or mislead the complainant in any manner.

"As to the Fifth item stated above, the Court finds that R. E. Phelan inserted or had inserted the words 'non-negotiable and non-transferable' in the $4,000 note, but the Court does not find that this was done for the express purpose of avoiding payment in full, but was so that the note could not be negotiated or transferred to some other person as an innocent holder.

"As to the Sixth item set out above, the Court does not find that by the acts of the defendant he intended to mislead, deceive or defraud the complainant, as the proof shows the complainant made and executed

the note for the automobile and it should be as distinct in his memory as it was in that of the defendant.

"As to the Seventh item set out above, the Court finds from the proof that W. O. Phelan, knew or should have known and had as full knowledge of the execution of the automobile note as did the defendant, and likewise knew or should have known whether or not he paid the same, and the fact that the note was not mentioned in the transaction of the purchase of the farm, the two transactions being entirely separate and distinct, was not a fraud on the part of defendant as the Court finds that the defendant has come into the Court with clean hands as to that matter."

The complainant has filed thirteen assignments of error in this court.

Before taking up these assignments of error we think it proper to give the background of the financial relationships existing between the parties for a period of many years antecedent to the unfortunate lawsuit between these two brothers.

Back about 1938, through the help of W. O. Phelan and largely at his request, R. E. Phelan purchased the 87 acre farm involved in this litigation at an original purchase price of $2,700. Both brothers were interested in obtaining a home for their father and mother, Mr. and Mrs. Sid Phelan, for their declining years. The elder Phelan had lost his home as a result of financial reverses and through foreclosure. Mr. and Mrs. Sid Phelan lived on said farm in the home with R. E. Phelan for the remainder of their lives. Mrs. Sid Phelan died shortly

after the purchase of the farm and the father, Sid Phelan, died in the early 1940's.

In 1941, R. E. Phelan executed a deed to W. O. Phelan to one-half interest in said farm. After the death of Mr. and Mrs. Sid Phelan, R. E. Phelan continued to make his home on the 87-acre farm and during the years he improved said farm by buildings and a deep well.

At the time of the trial he estimated that he had put $10,000 total capital into the farm and that W. O. Phelan had put only $1,000 of capital investment into the farm. At the time of the trial the farm was worth about $20,000. R. E. Phelan had received all rents from the farm continuously from the time he purchased it up until the time of the trial and had never accounted to W. O. Phelan for any rents from said farm.

Relationships between the brothers were very harmonious and friendly until sometime during the latter part of 1953. W. O. Phelan, who had been away from Trenton, Tennessee, for about twenty years, returned to Trenton, Tennessee, to live about the latter part of 1953.

When W. O. Phelan suggested $10,000 as the sale price of his one-half interest in the 87-acre farm and his half of accrued rents thereon, R. E. Phelan became highly incensed and felt that his brother was trying to mistreat him. The feeling became so tense that the brothers did not speak to each other.

In the early part of 1954, the parties began negotiating through a third party, one Mr. Norris, for the transfer to Mr. R. E. Phelan of W. O. Phelan's interest in the farm. Norris did not testify in the trial. They came to an agreement through this third party and on April 10,

1954, the transaction which resulted in this lawsuit was completed in the offices of the attorney for Mr. R. E. Phelan. W. O. Phelan was not represented by an attorney.

W. O. Phelan testified that he understood that all financial matters existing between him and his brother, R. E. Phelan, were being included in the financial transaction on that date. The defendant, R. E. Phelan, testified that the transaction on April 10, 1954, was not a final or full settlement of financial matters between him and his brother but that the transaction was limited only to the purchase by him of his brother's one-half interest in the farm and the settlement for the accrued rents. R. E. Phelan intentionally refrained from mentioning the automobile note and the $250 loan because he knew W. O. Phelan would not have signed the deed to the land if he had mentioned them or had told W. O. Phelan he intended to set them off against the $4,000 note.

On April 10, 1954, when the transaction was held, the financial relationship between the parties was as follows:

(1) W. O. Phelan and R. E. Phelan were tenants in common of the 87-acre tract of land in which R. E. Phelan had a capital investment for improvements and purchase price of $10,000 and in which W. O. Phelan had a capital investment of only $1,000. The defendant, R. E. Phelan, had never accounted to W. O. Phelan for any rentals from said land for the period of about eighteen years.

(2) R. E. Phelan held a promissory note signed by W. O. Phelan in September, 1948, in the principal amount of $1,976 drawing interest at 6% from date and due on demand and no part of said note had ever been paid.

(3) R. E. Phelan held a check against W. O. Phelan as an open loan. This loan was made by R. E. Phelan to W. O. Phelan in June, 1953, while the parties were on vacation in Florida. No note was given for this loan.

(4) W. O. Phelan and R. E. Phelan and other children of Sid Phelan were joint owners of a verbal right to purchase a 29-acre tract of land known as the "bottom tract" then owned by Hon. Robert P. Adams of Trenton, Tennessee. This tract of land had formerly belonged to Sid Phelan and had been bought in at foreclosure by Mr. Adams as a friend of Mr. Sid Phelan and kept by Mr. Adams through the years with the understanding that the children of Mr. Phelan could redeem this land at any time by reimbursing Mr. Adams for the purchase price. Up until April 10, 1954, this offer had not been fully accepted. However, it seems that R. E. Phelan had paid some of the heirs of Sid Phelan $300 each for their quitclaim or equity in the 29-acre bottom tract.

On April 10, 1954, after W. O. Phelan had executed a deed to one-half interest in the 87 acres and released all claims for rentals therefrom, R. E. Phelan paid him $4,500 in cash and also executed the $4,000 note due on or before September 15, 1954, without interest and which note was made non-negotiable. No mention was made by R. E. Phelan of the automobile note and no mention was made of the $250 loan.

Thereupon, the parties went to the office of Hon. Robert P. Adams, an attorney of Trenton, Tennessee, who held title to the 29-acre tract of land formerly belonging to Sid Phelan and which Mr. Adams had agreed the heirs of Sid Phelan could redeem at any time they wished. W. O. Phelan executed the following release to his in-

terest in the 29-acre tract of land in favor of R. E. Phelan:

"Mr. Robert Adams

"Dear Sir: This is to advise you that I relinquish all claim in and to a 29 acre tract of land known as the bottom place, in which title is now in you, and respectfully request that you make the deed to R. E. Phelan. Very truly yours, Osborne Phelan."

On the same date, April 10, 1954, Finis Phelan, a brother who lived in Detroit signed a similar release in favor of R. E. Phelan. R. E. Phelan did not pay W. O. Phelan any consideration for his release or disclaimer of the equitable interest in the 29-acre tract of land unless a consideration was contained in the $4,500 cash or the $4,000 non-negotiable note paid to W. O. Phelan by R. E. Phelan in connection with the deed to the real estate and rents.

Mr. R. E. Phelan testified that the reason he did not mention the 1948 automobile note for $1,976 and the loan of $250 at the time the deed to the real estate and rents was being executed was that he knew that the deal would not have gone through if he had mentioned them. He further explained that he had the note made non-negotiable so that it could not get into the hands of an innocent purchaser and so that he would be able to set off against said note the two items of the automobile note and the $250 loan.

Shortly before September 15, 1954, when the $4,000 note became due and payable, Mr. R. E. Phelan's home burned and the 1948 automobile note was destroyed along with the cancelled check for $250 which Mr. R. E. Phelan

had given in 1953 to make the loan to W. O. Phelan. R. E. Phelan, at the trial proved the existence of said note by his testimony and that of several other people who had seen the note in his possession.

In his testimony, W. O. Phelan admitted that he got the automobile in 1948 but stated that he had no present recollection of actually signing the note of $1,976 but did not deny it. He also testified that he reduced his asking price for the final settlement from $9,000 to $8,500 after the go-between, Norris, had told him that R. E. Phelan had raised the question of the automobile in connection with the settlement. R. E. Phelan testified that the matter of the automobile was not mentioned at any time in connection with the purchase of the interest in the farm and claim for rents.

With reference to the $250 loan, W. O. Phelan admitted getting the $250 in 1953 but stated that he thought R. E. Phelan intended it as a gift.

Several witnesses testified that R. E. Phelan had shown them the $1,976 automobile note and the $250 check at his home on the farm. The occasion was sometime after April 10, 1954, when the deed to the farm and rents was executed by W. O. Phelan and before the house burned in the summer of 1954. The reason R. E. Phelan was showing them the notes was to tell them his side of the story and to show that he had not tried to beat W. O. Phelan out of any property as the witnesses had heard.

Assignment of error No. 13 insists that the Chancellor. was in error in submitting to the jury as issue of fact No. 1 the question of whether or not the complainant,

W. O. Phelan, had executed the $1,976 automobile note to R. E. Phelan.

After the defendant, R. E. Phelan, set up in his answer the claim of set-off for the $1,976 note, the complainant, W. O. Phelan, filed a statement under oath that he did not owe the $1,976 note for which the defendant claimed set-off because said note was completely liquidated and discharged in a settlement between the complainant and defendant in April, 1954. He expressly set out in said affidavit that he did not deny the execution or delivery of the note.

When the complainant, W. O. Phelan, was on the stand as a witness, defendant's counsel sought to ask him whether or not he actually signed the note to which counsel for complainant, W. O. Phelan objected. After a discussion between the counsel for complainant, counsel for defendant and the Court, counsel for complainant agreed that the Chancellor could charge the jury that the complainant, W. O. Phelan, admitted the execution and delivery of the $1,976 note. Over objection of W. O. Phelan's counsel, counsel for R. E. Phelan were permitted by the Chancellor to ask W. O. Phelan whether or not he signed the $1,976 note to which he replied that he did not remember signing it but that he did not deny that he signed it. Counsel for defendant insisted that they were entitled to cross-examine on this question as a matter of impeachment. Assignment of error No. 12 insists that it was error on the part of the Chancellor to permit the cross-examination for purposes of impeachment on this immaterial matter.

In our opinion, we think His Honor, the Chancellor was in error in submitting to the jury the question

of whether or not W. O. Phelan executed the $1,976 note. In the first place, he had stated under oath that he did not deny the execution of the note. In the second place, his solicitors, in open court, had conceded the execution and delivery of the note and had agreed that the Chancellor could charge the jury that the complainant had admitted the execution and delivery of the $1,976 note. In the third place, the complainant had not introduced any testimony of any kind to deny the execution of the note but the complainant himself had simply testified that he did not remember signing the note.

Since there was no evidence on which the jury could have found that the complainant, W. O. Phelan, did not sign the note, this issue of fact was not in dispute and we think His Honor was in error in submitting it to the jury. DeRosset Hat Co. v. London Lancashire Fire Insurance Co., 134 Tenn. 199, 183 S. W. 720; Mutual Life Insurance Co. v. Burton, 167 Tenn. 606, 613, 72 S. W. (2d) 778; Liberto v. Steele, 188 Tenn. 529, 221 S. W. (2d) 701, 702. Hence assignment of error No. 13 is sustained.

In our opinion it is a matter which rested within the discretion of the Chancellor as to whether or not he should permit the cross-examination of W. O. Phelan as to whether or not he did sign the note. We see no abuse of discretion in permitting counsel for R. E. Phelan to ask W. O. Phelan whether he did or did not sign the note. Hence assignment of error No. 12 is respectfully overruled.

Assignment of error No. 6 insists that the Chancellor was in error in refusing to give in charge complainant's special request No. 1 which was as follows:

"The settlement and execution of ,the note in April, 1954, makes a prima facie case that all matters had been settled in full and the burden of proof is upon the defendant, R. E. Phelan to overcome this."

That portion of His Honor's charge relating to the presumption of settlement is as follows:

"The Third, 'Was there a complete settlement of all matters between the complainant and the defendant in April 1954?' As to this question the Court charges you that if there is a business transaction between two parties and those parties get together and execute a note, it is presumed that that note is a settlement of matters between them, and that is only, however, a presumption and is not conclusive and is subject to be removed by proof. If the note of $4,000 was executed in the presence of both of these parties it is to be presumed that they settled prior matters, but as the Court has formerly stated, that is only a presumption and standing alone, without any contradiction would constitute a settlement of all matters concerned, but that presumption can be removed and rebutted by proof, and it lies within the province of this jury to determine from the facts whether or not that presumption was overcome by proof."

The above quotation from His Honor's charge is made the basis of assignment of error No. 8 and we think both assignments of error Nos. 6 and 8 should be considered together.

While there is some authority to the contrary, yet our Tennessee Supreme Court, one hundred years ago in the case of Robertson v. Branch, 35 Tenn. 506, announced this rule:

"We regard it as a well-settled principle that the execution of a note under seal is prima facie evidence of the settlement of all pre-existing accounts between the parties and that it throws the onus of proof on the party who claims otherwise."

The above case of Robertson v. Branch was cited with approval in American Annotated Cases, 1914B, p. 384, in which this statement is made:

"The authorities are almost unanimous in holding, in accordance with the reported case, that the execution of a promissory note gives rise to a presumption that the payee is not indebted to the maker. This rule is applicable to suit between the parties to a note, wherein the maker sets up a claim against the payee, which he alleges was in existence at the time the note was executed." Citing cases from different jurisdictions.

The above statement is quoted from a Note following the reporting of the case of Beneke v. Estate of Beneke, 119 Minn. 441, 138 N. W. 689—Nov. 29, 1912.

In the present case the $4,000 promissory note did not recite that it was the remainder of the purchase money for the interest in the tract of land and made no reference to the deed which was executed on the same day from W. O. Phelan to R. E. Phelan. Likewise, the deed from W. O. Phelan to R. E. Phelan made no mention of the $4,000 note being executed but recited a consideration of only $4,500 cash.

The defendant, R. E. Phelan, testified that he had on many occasions asked the complainant, W. O. Phelan, for payment of the $1,976 note without success. Certainly

under these circumstances, the execution of the $4,000 unsecured note would raise a presumption that any pre-existing indebtedness held by him against W. O. Phelan was merged into the $4,000. That is simply the logical inference to be drawn from the fact that people do not ordinarily execute promissory notes to the order of persons against whom they claim past-due indebtednesses. In this case the automobile note was almost barred by the statute of limitations and the other indebtedness was not even evidenced by a promissory note.

■ Of course, the presumption is not conclusive but clearly the law in Tennessee and most other states is that the burden of proof was upon the defendant, R. E. Phelan, to overcome the effect of this presumption by a preponderance of the evidence.

■ This presumption or inference of settlement, being based upon the experience of mankind falls in a different category from that of those inferences which are generally called bare or arbitrary presumptions raised as a matter of expediency for procedural purposes. The latter type disappear and become functus officio upon the introduction of creditable evidence, however slight, in contradiction thereto. Presumptions or inferences such as the presumption of settlement in the case at bar continue as evidence in the case throughout the trial and are to be weighed by the jury along with all the other evidence in the case. Southern Motors v. Morton, 25 Tenn. App. 204, 154 S. W. (2d) 801, 806, and McMahan v. Tucker, 31 Tenn. App. 429, 216 S. W. (2d) 356, 362, 363, 364; Bryan v. Aetna Life Insurance, 174 Tenn. 602, 130 S. W. (2d) 85.

■ Therefore, we think His Honor's charge was defective in failing to charge the jury that the burden of proof was on the defendant, R. E. Phelan. Likewise, we think he should have gone further and charged the jury that the presumption of complete settlement continued until the jury was satisfied by a preponderance of the evidence that the two items of indebtedness, namely the $1,976 note and the $250 loan, were not contained or settled in the execution of the $4,000 note. Further, we think the jury should have been instructed that if the jury found the evidence equally balanced as to whether or not the two items were contained in the settlement then the defendant would have failed to carry the burden of proof and their finding should be that there was a complete settlement. See "McCormick on Evidence", 1954 Edition, Chap. 36—"The Burden of Producing Evidence, Presumptions and the Burden of Persuasion." Hence assignments of error Nos. 6 and 8 are sustained.

Assignment of error No. 7 complains of the action of the Chancellor in refusing to charge special request No. 2 which was as follows:

"The proof necessary to overcome the prima facie case that all matters were settled in full must be clear and satisfactory."

■ In our opinion, the Chancellor properly refused to grant this charge. It was only necessary that the defendant prove by a preponderance of all the evidence, whether direct, circumstantial or a mixture of the two, that the two items of indebtedness were not contained or settled in the execution of the $4,000 note. Hence assignment of error No. 7 is respectfully overruled.

Assignment of error No. 9 complains of the refusal of the Chancellor to grant special request No. 3 which is as follows:

"It is an established fact that R. E. Phelan intentionally remained silent about any claim for any money due him by reason of the automobile note. Where a person's silence enables him to acquire unfair advantage over another in settlement of property rights, it is his duty to speak."

The subject matter of this request was not determinative of the issues of fact submitted to the jury and we do not think His Honor, the Chancellor, was in error in failing to give this charge and therefore, assignment of error No. 9 is overruled.

Assignment of error No. 10 complains of the failure of the Chancellor to charge special request No. 4 which is as follows:

"If the defendant R. E. Phelan's failure to speak was calculated to and did mislead W. O. Phelan into making the settlement, he cannot now claim that the settlement was not complete."

Only the Chancellor could decide whether or not the defendant, R. E. Phelan, was estopped by his conduct to claim that the settlement was not complete. In our opinion, it would have been erroneous for him to have submitted special request No. 4 to the jury. Therefore, assignment of error No. 10 is respectfully overruled.

Assignment of error No. 11 insists that it was error for the Court to allow counsel for defendant to ask complainant if he sold whiskey while in Florida and to ask

complainant if there were any gambling devices in a place of business where the complainant had worked in Florida.

■ In our opinion, it was proper for the Chancellor, in his discretion, to allow this cross-examination. We doubt that it would have been competent to have impeached the defendant by other testimony if he had denied such activities. Therefore, assignment of error No. 11 is respectfully overruled.

Assignment of error No. 5 insists that the complainant was entitled to a new trial because there was no material evidence to support the verdict or finding of the jury in regard to issue of fact No. 4.

■ This issue of fact No. 4 was: "Did W. O. Phelan understand that the April, 1954, settlement was a complete settlement? Answer: No." It is true that W. O. Phelan testified that he understood that the April, 1954, settlement was a complete settlement and no witness testified directly to the contrary. However he did testify that he reduced his asking price from $9,000 to $8,500 after Norris told him that R. E. Phelan had mentioned the matter of the automobile. R. E. Phelan expressly denied that the matter of the automobile was ever mentioned. Likewise, W. O. Phelan testified that he thought the $250 item was a gift instead of a loan. W. O. Phelan's credibility as a witness was thereby put in issue and therefore, we think this issue of fact was properly submitted to the jury.

■ Assignment of error No. 4 insists that there was no material evidence to support the finding of the jury on issue No. 3 which is as follows:

"Was there a complete settlement of all matters between the complainant and defendant in April, 1954?

Answer: No."

The complainant, W. O. Phelan, had testified that there was a complete settlement and the defendant, R. E. Phelan, expressly testified that he did not intend to make a complete settlement. Therefore, this made a sharp issue of fact for the jury. Assignment of error No. 4 is respectfully overruled.

Assignment of error No. 1 insists that the Chancellor erred in overruling complainant's motion for a decree for the full amount sued for notwithstanding the jury verdict.

Assignment of error No. 2 insists that the Chancellor erred in overruling complainant's motion to discharge the jury and enter a decree in his favor made at the close of defendant's proof.

Assignment of error No. 3 complains that the Chancellor erred in overruling complainant's motion to discharge the jury and enter a decree in his favor made at the close of all the proof.

These three assignments of error all raise the one question of whether or not the testimony of the defendant, R. E. Phelan, himself shows him guilty of such conduct which as a matter of law estops him to claim set-off for these two items of indebtedness.

Solicitors for W. O. Phelan rely upon the case of Church of Christ v. McDonald, 1943, 180 Tenn. 86, 171 S. W. (2d) 817, 146 A. L. R. 1173, as authority for their

contention that the defendant, R. E. Phelan, has been guilty of such conduct as estops him to claim set-off for the $1,976 automobile note and the $250 loan against the $4,000 note.

Disregarding, in its entirety, the testimony of W. O. Phelan, from the testimony of the defendant, R. E. Phelan, himself, and his witnesses we find the following undisputed facts: On April 10, 1954, R. E. Phelan made a settlement with his brother, W. O. Phelan. Under the terms of this settlement, R. E. Phelan paid his brother, W. O. Phelan, $4,500 in cash and executed to him an unsecured promissory note for $4,000 drawing no interest due and payable on or before September 15, 1954.

In exchange for this consideration, R. E. Phelan received from W. O. Phelan:

(1) A deed to W. O. Phelan's one-half interest in 87 acres of land.

(2) A release of W. O. Phelan's claim to one-half interest in accrued rentals from said 87-acre tract from which R. E. Phelan had received all rents since 1938 and for which he had never made any settlement or accounting to W. O. Phelan prior to April 10, 1954.

(3) W. O. Phelan executed in writing a release in favor of R. E. Phelan of his right to redeem a 29-acre tract of land known as the "bottom tract". R. E. Phelan had paid the brothers and sisters of W. O. Phelan $300 each for their releases of their respective interests in this 29-acre tract. R. E. Phelan had been receiving all rents from the 29-acre tract for some seven or eight years prior to the settlement on April 10, 1954.

The above settlement on April 10, 1954, constituted a complete settlement of all financial matters existing between W. O. Phelan and R. E. Phelan except the two items of indebtedness which R. E. Phelan then held and claimed against W. O. Phelan; to wit, the $1,976 automobile note plus accrued interest from September, 1948, and the $250 open loan made in 1953.

Under these circumstances, R. E. Phelan completed the transaction and deliberately refrained from mentioning either the $1,976 automobile note or the $250 loan. Further, by his own admission, he signed and delivered the $4,000 note knowing full well that he had no intention of paying said note. As an extra precaution he had the $4,000 note made non-negotiable and non-transferable so that it could not be hypothecated to a third person and thus prevent the defendant, R. E. Phelan, from setting off the $1,976 automobile note plus accrued interest and the $250 loan when the note should become due and payable.

In addition, Mr. R. E. Phelan testified that the reason he did not mention either the $1,976 automobile note and the $250 loan was that he knew that the deal would not have gone through and he would not have gotten a deed to his brother's one-half interest in the farm if he had mentioned those two items at the time of the settlement.

All of the circumstances mentioned above are undisputed and proven by the testimony of Mr. R. E. Phelan and his witnesses. In our opinion, Mr. Phelan, by his own admission, is guilty of such conduct as estops him to now claim set-off for these two items. We think the facts and principles of equity jurisprudence announced by Justice Neil (now Chief Justice) in Church

of Christ v. McDonald, 171 S. W. (2d) 817, 821, are applicable to the case at bar.

In that case the husbands of two of the heirs of a testator negotiated a settlement and compromise for the interests of their wives against the estate of the testator whose will the two wives were contesting. These two husbands made no mention at the time of the settlement that they themselves held claims against the estate of the testator for services rendered.

After the settlements had been made and their wives had received the money, the two husbands made claim against the estate for services rendered the testator. The Church of Christ which was the principal beneficiary under the will of the testator brought suit to enjoin the prosecution of these two claims on the grounds that the two husbands were estopped to make claim against the estate since they had failed to reveal their personal claims at the time they were negotiating a settlement on behalf of their wives.

From said opinion we quote as follows:

"(2-4) The grounds upon which the Chancellor dismissed the complainant's bill, that no intentional or wilful fraud is shown, is unsound. We think the weight of modern authority is that, even though no fraud is intended, yet one may be estopped from claiming property where by intentional concealment of facts he has induced another to act to his prejudice. It is unnecessary to state the well known essential elements which must exist which lie at the basis of the doctrine of equitable estoppel. Mr.

Pomeroy's Equity Jurisprudence, Vol. 3, p. 189, says:

" 'Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.'

"The learned author further says:

" 'It is not absolutely necessary that the conduct mentioned in the first subdivision should be done with a fraudulent purpose or intent, or with an actual and fraudulent intention of deceiving the other party. The adoption of such an element as always essential would at once strike out some of the most familiar and best established instances of equitable estoppel.' Pomeroy's Eq.Jur., Vol. 3, pp. 193, 194.

\* \* \* \* \* \*

"(8) The term 'conduct', when applied to a person in relation to the modern doctrine of equitable estoppel, embraces not only ideas conveyed by words written or spoken and things actually done, but includes the silence of such person and his omission to act, as well. Wampol v. Kountz, 14 S. D. 334, 339, 85 N. W. 595, 86 Am. St. Rep. 765; footnote, 31 C. J. S. Estoppel sec. 87, p. 305, quoting Farr v. Semmler, 24 S. D. 290, 123 N. W. 835, 838."

In this case the testimony of Mr. R. E. Phelan shows clearly that his failure to mention the two items of indebtedness enabled him to drive a bargain with his brother which his brother would not have made had he mentioned that he intended to set off those two items of indebtedness against the $4,000 note when the same became due and payable. Under these circumstances we think it would be inequitable to allow R. E. Phelan to set off these two items of indebtedness against the $4,000 note unless he should be willing to set aside the entire settlement of April 10, 1954, and have a complete and final settlement of all matters between him and W. O. Phelan. This latter the solicitors for R. E. Phelan have indicated that he is unwilling to do.

Accordingly we hold that the Chancellor should have withdrawn the issues from the jury, disallowed the claim for setoff for the $1,976 note and the $250 loan and rendered judgment on the $4,000 note accordingly. Assignments of error 1, 2 and 3 are sustained.

The decree of the Chancellor is respectfully reversed and a decree will be entered in this court disallowing the items of set-off and rendering a judgment in favor of complainant, W. O. Phelan, against the defendant, R. E. Phelan, for $3,650 plus interest from September 15, 1954. The defendant, R. E. Phelan, will be taxed with the costs of the court below and this appeal.

Avery, P. J. (W. S.), and Bejach, J., concur.

Avery, Presiding Judge (concurring).

In clarification of my position with respect to the rights of the parties in this cause, I am of the opinion that there are at least two maxims of equity, either of which would

prevent a court of equity from granting the relief sought by the defendant's efforts to set off the claim of complainant. These maxims are:

"He who seeks equity must do equity"

and

"He who comes into equity must come with clean hands".

"Am I my brother's keeper?" is a question that has been asked and answered from the earliest days of man's creation.

The parties to this litigation are brothers. They may have become estranged to each other so far as conversing with each other is concerned, but that estrangement grows out of the very situation involved in this litigation, and to such an extent that a person, supposedly a friend to each but who did not testify for either, made an effort to bring about a settlement between these parties which ripened into what complainant evidently thought was a settlement of all existing matters between them and which the defendant, by his positive statement and acts, understood to be the thought of his brother, the plaintiff; and so understanding, he did two things which, to my mind, would repel him from a court of equity.

(1) Knowing that his brother, the plaintiff, so understood the situation, he purposely refrained from mentioning the note and check which he insists he was entitled to set off against the claim of his brother. As shown in the foregoing opinion, he admitted that he did not mention it because he was afraid that his brother would not complete the transaction involved in this very litigation

if he did mention it. With knowledge of the fact that his brother, the plaintiff, understood that it was a complete transaction of all matters between them, he could not, in good conscience and equity, remain silent and thereby lead his brother to agree to a settlement, knowing that he himself was concealing, or at least refusing to reveal, that which in good conscience required him to reveal.

(2) He had written into the note which he signed and gave to his brother a statement which made that note non-negotiable, all of which was done for the purpose of obtaining a benefit for himself from his brother which he understood that his brother had considered settled at the time that defendant paid the complainant over $4,000 in cash and executed his non-negotiable note for the remainder of the consideration evidencing the settlement.

"He who seeks equity must do equity" is applicable in cases of an affirmative equitable defense. Mr. Pomeroy in his work on Equity, 5th Ed., Volume 2, Sec. 393e, with respect to this maxim, says:

"It is held that the principle applies to a defendant who sets up an affirmative equitable defense claiming some affirmative relief, since he is then in exactly the same position as a plaintiff. This must be the true limitation of the principle in its application to defendant; it certainly does not and cannot apply to defendants generally, who merely seek to defeat the plaintiff's demand, and ask no affirmative relief for themselves, either directly or indirectly."

The doctrine of "clean hands", so says Mr. Pomeroy, at page 91, Sec. 397 of Volume 2,

"* * * assumes that the suitor asking the aid of a court of equity has himself been guilty of conduct in violation of the fundamental conceptions of equity jurisprudence, and therefore refuses him all recognition and relief with reference to the subject-matter or transaction in question. It says that whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy."

Again, in Section 399, pp. 94-95, Mr. Pomeroy says:

"The maxim, considered as a general rule controlling the administration of equitable relief in particular controversies, is confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction; it does not extend to any misconduct, however gross, which is unconnected with the matter in litigation, and with which the opposite party has no concern. When a court of equity is appealed to for relief it will not go outside of the subject matter of the controversy, and make its interference to depend upon the character and conduct of the moving party in no way affecting the equitable right which he asserts against the defendant, or the relief which he demands."

Certainly this record reveals that the complainant has been injured by the purposed, understood and perpetrat-

ed silence of the defendant, together with the non-negotiable clause written into the note executed by him to the complainant, all of which was involved in the very transaction between these two parties. Thus, it would seem to me that a court of equity will not remove the shadow of inequitable conduct or the soiled hands of misconduct to grant relief to him whom a court of equity can see is guilty of such inequitable misconduct. However good may have been the motive of the defendant when he made improvements to the property which belonged to him and his brother and others as tenants in common, he cannot rely upon his good motives in that regard to justify his inequitable motives which compelled him to act in a way expressed from his own lips as revealed by this record.