*In re* FARMERS' & MECHANICS' BANK OF ROCHESTER, a Bankrupt.

*(District Court, N. D. New York.* 1882.)

1. EQUITY—MONEY PAID BY MISTAKE—RECOVERY BACK.

> Where, by mistake, there is a payment of money, which there is no ground to claim in equity or conscience, it is recoverable back.

2. SAME—CASE STATED.

> Where a bank, on a certain date, was indebted to a depositor, who owed the bank on a note not yet due, and who purchased of the bank and gave his check for a draft on a distant city, which was mailed to that city to pay an indebtedness to an insurance company, but the draft was dishonored, and notice given, the bank in the meantime having become bankrupt, and, upon consulting with a layman, he was advised that bankruptcy prevented an offset, and he paid the note to the assignee, *held*, that he was entitled to a return of the money so paid by him.

*J. M. Dunning,* for petitioner.

*W. H. Whiting,* for assignee.

COXE, D. J.   On Saturday, the sixteenth day of May, 1874, the Farmers' & Mechanics' Bank owed George H. Roberts, as depositor, $650, and he owed the bank $500 on a note due the latter part of June, 1874.   On that day he bought at the bank a New York draft for $500, paying for it by his check.   He mailed the draft to New York to pay an indebtedness to the Globe Insurance Company of that city.   On the eighteenth of May (Monday) the bank suspended, and on the 20th a petition in bankruptcy was filed.   The draft was never paid. Roberts received notice of its dishonor by mail on the twenty-first of May.   On the ninth day of July, after consulting with his partner, a layman, who advised him that bankruptcy prevented an offset, he paid the note to the assignee.   Asserting that he paid under a misapprehension of his rights, he seeks to have the money returned to him. The matter was referred to the register in charge to report the facts, with his opinion.   The case is now before the court on exceptions to the referee's report, which was adverse to the petitioner.

I cannot assent to the conclusions reached by the learned referee, and am constrained to hold that Roberts is entitled to the relief asked for in the petition.   I think he had a perfect defense to the note, and paid it under a mistake.   Had he been familiar with section 20 of the bankrupt act it can be said, almost with certainty, that he would not have taken the course he did.   Indeed, the fact of the payment of the note without demur is alone sufficient to carry the conviction that it was the act of a man ignorant of the existence of a law which virtually canceled the obligation.   If the debt was

one which, in good conscience, he was bound to pay, he could not now take advantage of that ignorance; but it was not such a debt. That Roberts had a legal offset to the note on the ninth day of July, 1874, I have no doubt. It is true that he did not then have actual possession of the draft, but I fail to see how this circumstance changed the legal *status* of the parties. On the sixteenth of May he paid the bank $500 for a piece of worthless paper. He attempted to use this paper to pay his debt to the insurance company. The company finding it to be valueless, declined to receive it, and so notified him on the twentieth of May. On the 16th Roberts bought the draft and was its owner. When did he lose title to it? When did the company ever accept it, or acquire title to it? Understanding the evidence as he does, the conclusions of the learned referee are certainly correct. He says: "The note was paid July 9, 1874, when the draft was held by the drawee, and before the insurance company had decided to repudiate it."

It seems to me that the letter of May 20th was a legal repudiation of the draft. It is in these words: "Your check for five hundred dollars on the Farmers' & Mechanics' Bank has been returned to us marked 'not good.' Please remit for same and oblige." If the letter had contained the additional expression, "We repudiate the draft and hold it subject to your order," how much stronger would it have been? Was not all this implied? Nor do I think the legal aspect was changed because Roberts, unconscious of his remedy at Rochester, endeavored to induce the insurance company to accept the draft or help share his loss. They never did accept it; the position taken in the letter was maintained throughout; payment of the $500 debt was insisted upon to the last dollar; and Roberts was the owner—doubtless the unwilling owner—of the worthless draft. Whether it was in his possession or not is surely immaterial. If, instead of sending the New York draft, he had sent his own check, it will be readily seen that if the check had not been presented until after the suspension of the bank, he would have had a perfect offset to the note; and yet the cases are parallel in principle. The bank officials gave him, in return for his $500, a valueless paper; and they must have known that it was valueless at the time. He has never received a dollar, directly or indirectly, on the draft. Legally and equitably the bank owed him the $500. The assignee could never have collected the note by process of law; there was a perfect defense. Roberts was not legally bound to pay the note, nor did good conscience require it. If restitution is not

made, the creditors will receive a sum to which they **are** not entitled, and which they never would have received but for an inadvertent act. I cannot divest myself of the impression that Roberts made a mistake which a layman might naturally make, and that it would be inequitable and unjust not to relieve him from its consequences.

In the case of *Bize* v. *Dickason*, 1 Durn. & East, 285, upon facts almost precisely similar, the court decided in favor of allowing the set-off. In that case Lord Mansfield said:

"The rule had always been, that if a man has actually paid what the law would not have compelled him to pay, but what in equity and conscience he ought, he cannot recover it back again in an action for money had and received. So where a man has paid a debt, which would have otherwise been barred by the statute of limitations; or a debt contracted during his infancy, which in justice he ought to discharge, though the law would not have compelled the payment, yet the money being paid, it will not oblige the payee to refund it. But where money is paid under a mistake, which there was no ground to claim in conscience, the party may recover it back again by this kind of action."

It follows that the prayer of the petition should be granted.