**In re Sam and Esther EDELSBERG Debtors.**

**Sam and Esther EDELSBERG Plaintiffs,**

**v.**

**THOMPSON MCKINNON SECURITIES INC., & Paine, Webber, Jackson & Curtis, Inc., Defendants.**

Bankruptcy No. 87–02188–BKC–AJC. Adv. No. 88–0444–BKC–AJC–A.

United States Bankruptcy Court, S.D. Florida.

June 7, 1989.

Law Office of D. Jean Ryan, Miami, Fla., for debtors.

N. James Turner, Buso & Turner, P.A., Orlando, Fla., for Paine Webber.

Scott W. Cichon, Thompson, McKinnon Securities, Inc., Daytona Beach, Fla., for Thompson, McKinnon Securities, Inc.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. JAY CRISTOL, Bankruptcy Judge.

This matter came before the court on November 23, 1988, for a pre-trial conference. The matter is a core proceeding under 28 U.S.C. §§ 1334 & 157, and was brought before the court by adversary proceeding under part VII of the Bankruptcy rules. Pursuant to the court's order of November 30, 1988 the cause was not set for trial, but was decided on the documents, affidavits, and memoranda submitted. Having reviewed the data and arguments submitted by counsel, the court makes the following *Findings of Fact and Conclusions of Law.*

## FINDINGS OF FACT

1. Sam S. Edelsberg maintained an open account, number SP–05065–18, with Paine, Webber, Jackson & Curtis (hereafter PaineWebber) in which he traded heavily from March, 1985 until December, 1985.

2. On November 25, 1985 PaineWebber credited a check to Mr. Edelsberg's account in the amount of $8,391.00.

3. There was no prior transaction on the November statement that exactly corresponded to this amount. On November 22 Mr. Edelsberg had purchased 20 puts due 12/85 on the American Exchange Major Market Index, strike price $275. The quote was 4⅜, and he was charged $8,966.88.

4. Mr. Edelsberg's account statement with PaineWebber for November showed an opening balance in his favor of $275.49, and a closing balance in his favor of $410.82.

5. Mr. Edelsberg's December statement showed a debit for a returned check in the amount of $8,391.00 on December 12, 1985. No purchases or payments are shown in December. After PaineWebber set off his positive balance, charged his account for a returned check, and made other minor adjustments, his closing balance for December was $8,004.06 in favor of PaineWebber.

6. Mr. Edelsberg's January statement shows the transfer of this receivable of $8,004.06 to the Legal Ledger of the National Collection Department of PaineWebber.

7. On March 16, 1987, PaineWebber obtained a judgment for damages in the amount of $8,391.00, the amount of the returned check. Also included in the judgment were prejudgment interest from November 20, 1985, costs of $315.20, and attorney's fees of $4,000, for a total of $14,048.76.

8. PaineWebber garnished Thompson Mckinnon Securities, Inc. (TMSI) on March 27, 1987. The garnishment was served on March 30, 1987.

9. TMSI answered that the only asset of the defendant, Sam Edelsberg, that they held was a CAT (Certificate of Accrual, Treasury) bond in his individual retirement

account. TMSI further answered that such accounts were exempt from claims of creditors by virtue of 29 U.S.C. § 1056(a), and that defendant was indebted to TMSI in the amount of $6,700 and TMSI was "entitled to offset the funds it is holding against the debt of the defendant to TMSI." This answer was filed May 11, 1987.

10. TMSI did not deliver possession of the CAT bond to PaineWebber.

11. In a strikingly similar series of events involving Mr. Edelsberg and TMSI, on October 7, 1986, Mr. Edelsberg purchased 10 options from TMSI and paid with a $6,700 check. On November 5, 1986, the check was returned. December 2nd TMSI asked for payment, and Mr. Edelsberg wrote a series of smaller checks totalling $6,700 which also bounced.

12. TMSI has strong setoff and hypothecation language in their contract with Mr. Edelsberg, but this record shows no positive steps to hypothecate, sell, or set off against Mr. Edelsberg's CAT bond, nor has TMSI petitioned this court for relief from stay to do so.

13. On June 23, 1987, Mr. Edelsberg and his wife Esther filed for Chapter 13.

14. The Edelsbergs listed an undisputed obligation to PaineWebber in the amount of $14,048.76 on their 12(c) unsecured debt schedule. They also listed an undisputed obligation to TMSI for $6,900.

15. PaineWebber filed a Proof of Claim on a Final Summary Judgment dated March 16, 1987, for $14,048.76. No expansion of facts or explanation of the suit underlying the judgment appears on the Proof of Claim.

16. TMSI filed a Proof of Claim on an open account for $6,700 plus ten percent annual interest as a general unsecured claim.

17. Mr. Edelsberg listed his IRA in the amount of $3,982.00 on schedule 14(b) as an asset.

18. The Edelsbergs filed a Chapter 13 plan which took into account this bond as an asset. The plan was confirmed without objection on August 26, 1987.

19. PaineWebber claims to have a perfected security interest in the CAT bond by virtue of the garnishment served on the custodian, TMSI.

20. TMSI is retaining the bond, apparently on a theory of set off.

## CONCLUSIONS OF LAW

### AS TO THE CLAIM BY PAINEWEBBER

The claim of PaineWebber must fail for several reasons. It appears that the security interest in the Edelsberg's CAT bond was never properly perfected under Florida law, which governs the garnishment. Assuming, arguendo, that TMSI held other assets against which the Writ of Garnishment did perfect a security interest, the perfection falls within the preference period and is voidable as a § 547(b) preference. Since PaineWebber reduced their claim to judgment, and in fact filed a claim based only on the judgment, PaineWebber is precluded by the merger doctrine from arguing a differing underlying transaction to avoid § 547(b).

1. The court takes judicial notice of Florida Statutes § 222.21 (1987), and Florida Statutes Ch. 678. Florida's Uniform Commercial Code was extensively amended effective October 1, 1987. The amendment most pertinent here is one that allows creditors to reach securities in the possession of financial intermediaries, Florida Statutes § 678.317(4). The following analysis is based on the state of the law regarding perfection of security interests as it existed on the date of service of the Writ of Garnishment by PaineWebber on TMSI, March 30, 1987. A different result would obtain as to this issue under present law. However, considering only Florida law, the ultimate result would remain the same, for as the Florida legislature gave creditors the right to reach securities in the hands of financial intermediaries, it took away their rights to reach retirement plans with the passage of Florida Statutes § 222.21. This court does not reach, and does not opine, on the issue of Federal preemption of this field.

2. A CAT bond is a security as that term is contemplated by § 2(1) of the Securities Act of 1933 and Florida Statutes § 678.102.

■ 3. On March 30, 1987, Florida Statutes § 678.317 provided that no attachment or levy was valid on a security until the security was actually seized by the officer making the attachment. Whether or not TMSI's defenses to the garnishment were sound, PaineWebber never actually gained possession of the CAT bond, and hence did not have a valid levy as to it.

■ 4. The garnishment was served on TMSI approximately 84 days prior to the Edelsberg's filing for Chapter 13 relief. This court has held that a Writ of Garnishment becomes perfected on the date that it is served. *Ryder v. Landmark First National Bank of Fort Lauderdale* 59 B.R. 868 (Bankr.S.D.Fla.1986). If there are assets (other than the CAT bond) against which this garnishment action perfected a security interest, that interest is avoidable as a preference under § 547(b). PaineWebber argues that they are entitled to the exception in § 546(e) for "settlement payments." There are two considerations. First, there was no "settlement payment" by the debtor; there was an attempt by a creditor to execute on a judgment. Second, although the complaint in the state court case was not placed before the court, it appears likely that the underlying suit was not on the debt, but on the returned check. The transaction for which this was supposed to be a settlement was for $8,966.88. The outstanding balance after PaineWebber applied setoffs against the account was $8,004.06, and this was the amount that PaineWebber transferred to their legal ledger. But PaineWebber sued for $8,391.00, the amount of the returned check. It appears that the garnishment of TMSI was at least two steps removed from a "settlement payment" as that term is defined in 11 U.S.C. § 741(8). That is too remote to allow PaineWebber to claim the exemption in § 546(e).

## AS TO THE CLAIM BY TMSI

TMSI alleges that they set off Edelsberg's obligation to them against his IRA at an unspecified time subsequent to December 2, 1986. Several considerations mitigate against this bare assertion. First, TMSI has submitted absolutely no proof of the fact or time of set off. Second, in answer to the Writ of Garnishment served on them within the preference period, TMSI asserted that the IRA was not subject to creditor's claims and that they were entitled to set off against it. Even though these assertions are inconsistent, they indicate that TMSI had not exercised its right of set off at that time. After the petition for relief, TMSI filed an unsecured claim for the entire amount plus interest, indicating that set off had not occurred even at that late date. TMSI has never petitioned this court for relief from stay to exercise its right of set off.

· ■ 5. TMSI argues that "the set off occurred by operation of the agreement when the reciprocal obligations occurred." At a later point in their Trial Memorandum, TMSI asserts that this automatic set off occurred in December, 1986.[1] The law is well settled that such set offs are not automatic or self executing. *Cumberland Glass Manufacturing Co. v. DeWitt and Co.*, 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 (1915). The method of execution of an allowable pre-petition set off is a matter of state law. *In re Saugus General Hospital, Inc.*, 698 F.2d 42 (1st Cir.1983). The agreement between the parties recites that New York law will govern,[2] and thus the court will decide this issue according to the law of New York. The Southern District of New York has been very helpful in

---

1. This is factually contradicted by TMSI's reply to PaineWebber's Writ of Garnishment on May 11, 1987. The reply is ambiguous. It is not clear whether TMSI was pleading at that time that they were entitled to set off against the CAT bond or were pleading a general right to set off against other, unspecified assets. What is clear

is that TMSI states that they were still the custodian of Edelsberg's IRA. The court infers that this means that no set off had occurred as to the IRA.

2. TMSI's Trial Memorandum, Exhibit "A," ¶ 3.

setting forth a three part test of the New York law: "Act of setoff is ... complete ... [when] three steps have been taken: (1) the decision to exercise the right, (2) some action which accomplishes the setoff, and (3) some record which evidences that the right of set off has been exercised." *Clarkson Co., Ltd. v. Shaheen*, 533 F.Supp. 905, 925 (S.D.N.Y.1982). There is no evidence before the court that indicates that any of these three steps was taken, either pre- or post-petition. Indeed, the only evidence on the point at all indicates that TMSI *recognized* that they had a right of set off which they intended to assert at some future time. Having failed to timely assert the right to set off, the court finds that TMSI has waived it.

6. Since set off did not occur pre-petition as TMSI argues, the continued refusal to turn over this asset may be a violation of the automatic stay of § 362.

7. The court does not reach the issue of waiver of a previously accomplished set off. The evidence, which includes TMSI's Proof of Claim in the original unreduced amount, is clear, and convinces this court that no set off was accomplished prior to the confirmation of the Chapter 13 plan. The waiver was a passive one: TMSI failed to assert its right of set off, they did not waive it by filing a Proof of Claim.

## THE BENEFITS OF CHAPTER 13

■ 8. Florida Statutes § 222.21 became effective on October 1, 1987, and is not applicable to the case at bar. The debtor has chosen to argue 11 U.S.C. § 1325 to the exclusion of 29 U.S.C. § 1056(d). Since the debtor did not choose to brief the issue, the court does not opine on the viability of the argument that 29 U.S.C. § 1056(d) also protects this asset.

■ For purposes of calculating payments to unsecured creditors under a Chapter 13 plan, the debtors must meet the liquidation test and pay to the unsecured creditors at least what they would have received if the estate were liquidated in a Chapter 7 proceeding. (*See* 11 U.S.C. § 1325(a)(4)). PaineWebber and TMSI were both treated as unsecured creditors under the plan. It is not material whether the garnishment was or was not properly pursued to judgment against the garnishee, TMSI, because it occurred within the preference period. PaineWebber's Proof of Claim constitutes an unsecured claim; its claim to a security interest is voidable by the debtors as a preference. (11 U.S.C. § 547(b)). TMSI, in turn, filed an unsecured Proof of Claim against the estate. The debtors listed the IRA funds in their schedules and included the value of the funds in calculating the payments to the unsecured creditors under the plan. Thus, the unsecured creditors received what they would have received under a Chapter 7 proceeding. Pursuant to 11 U.S.C. § 1327(b), the confirmation of a plan vests all of the property of the estate with the debtor unless otherwise provided for in the plan. In this case, there is no provision in the plan permitting TMSI to hold the IRA funds. The terms of a Chapter 13 plan bind both the debtor and the creditor and control any claims of the creditor whether or not he has filed an objection to the plan. *In re Flick*, 14 B.R. 912 (Bkrtcy.E.D.Pa. 1981). Furthermore, the property vesting in the debtors under a confirmed plan is free and clear of all claims and interests of creditors. (11 U.S.C. § 1327(c)). Once a Chapter 13 plan has been confirmed, there are seven procedural routes that may be available to an unsecured creditor to attack the plan: (1) appeal of a confirmation order; (2) motion to alter or amend the order, including a motion for reconsideration or for rehearing; (3) motion to dismiss the case; (4) motion to correct a clerical mistake; (5) adversary proceeding to revoke confirmation; (6) motion to set aside the confirmation on due process grounds; (7) motion to modify the Chapter 13 plan. *In re Moseley*, 74 B.R. 791, 798 (Bkrtcy.C.D. Cal.1987). PaineWebber and TMSI failed to attack the confirmed plan. Accordingly, by virtue of this Court's confirmation of the debtors' Chapter 13 plan, the property of the estate vested in the debtors, exempt from claims of pre-petition creditors by operation of law.

9. The CAT bond should be returned to Sam S. Edelsberg by Thompson McKinnon Securities, Inc. forthwith.

## FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusions of Law of even date, it is

ORDERED.

The Individual Retirement Account maintained by Sam S. Edelsberg at Thompson McKinnon Securities, Inc. is no longer subject to the claims of pre-petition creditors for the reasons recited. It is to be returned to Mr. Edelsberg with its accrued interest forthwith, for which let execution issue.

DONE and ORDERED.