In re the CUSTOM CENTER, INC., Debtor.

Kyle R. WEEMS, Trustee in Bankruptcy, Plaintiff,

v.

The UNITED STATES of America, on Behalf of the INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 91–10469.
Adv. No. 92–1122.

United States Bankruptcy Court, E.D. Tennessee.

Jan. 31, 1994.

---

Stephen R. Beckham, Chattanooga, TN, for plaintiff.

Josh Eagle and Carol Priest, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant.

## MEMORANDUM

RALPH H. KELLEY, Chief Judge.

This adversary proceeding is before the court on motions for summary judgment filed by the plaintiff and the defendant. The plaintiff is the bankruptcy trustee for The Custom Center, Inc. He brought this suit against the Internal Revenue Service (the IRS) to collect a tax refund. He also asks the court to disallow the IRS's claim until it pays the tax refund. In response to the trustee's complaint, the IRS filed a motion to lift the automatic stay so that it could set off the tax refund against the Custom Center's tax debts to the IRS.

The Custom Center applied for the refund under the quickie refund procedure. Normally the IRS must grant or deny a quickie refund based on a limited examination of the refund application. After granting the refund, the IRS can do an audit and may revoke the refund. 34 AM.JUR.2D, *Federal Taxation* ¶ 9631–9633 (1993). The IRS granted the quickie refund after the bankruptcy petition was filed.

Now the IRS wants to do the follow-up audit before the court treats it as owing any refund. The trustee argues that the IRS is bound by its decision to grant the quickie refund and is estopped to deny that it owes the refund, since it has treated the quickie refund as a debt to be set off.

The trustee also argues that the IRS cannot set off the refund because (1) the IRS failed to assert the set-off in its original proof of claim; (2) the debts are owed in different capacities because the Custom Center owes its debt to the IRS as a trustee; (3) the IRS set off the refund after bankruptcy, in violation of the automatic stay.

The IRS contends that it failed to assert the setoff in its proof of claim because it made a mistake, and the mistake should not be treated as a waiver of the right of setoff. The IRS says that it was uncertain as to whether the quickie refund was a debt to be set off. It intended to file an amended claim to assert setoff if the quickie refund was not revoked after the audit.

The IRS argues that it did not willfully violate the automatic stay because it was confused as to whether the Custom Center had filed bankruptcy. The bankruptcy petition named the Custom Center's parent corporation as the debtor and illegally tried to include all the subsidiaries in one petition. The bankruptcy notice to the IRS reflected this confusion. The IRS did not learn that the Custom Center was the intended debtor until after it set off the tentative refund.

The parties filed a joint stipulation which includes the following undisputed facts. On January 16, 1992, H & K, Inc., and its subsidiaries, including the Custom Center, Inc., filed a consolidated corporate tax return (Form 1120) for its tax year ending July 31, 1990. They also filed a separate "Authorization and Consent of Subsidiary Corporation to be Included in a Consolidated Tax Return" (Form 1122) for each subsidiary of H & K. On January 16, 1992, Custom Center filed a "Corporation Application for Tentative Refund" (Form 1139), seeking to carry back a net operating loss of $420,305 to its taxable years 1988, 1989, and 1990. The consolidated corporate tax return and application for tentative refund were hand-delivered to the Internal Revenue Service's Chattanooga office, and received by the IRS's Memphis Service Center on January 29, 1992.

The application for tentative refund indicated that the consolidated return had been filed by the common parent, H & K, and claimed a tax decrease totalling $81,566.

This was made up of $21,313 for 1990, $48,963 for 1989, and $11,290 for 1988. Because Custom Center had already paid these taxes, its application claimed entitlement to a tentative refund.

On January 24, 1992, a voluntary petition for relief was filed under Chapter 7 of Title 11, United States Code. The petition identified the debtor as "H & K, Inc., and Subsidiaries." The petition also identified "the Custom Center, Inc., f/k/a Chattanooga Custom Center, Inc." on the petition under "All Other Names." The petition included the employer identification number (EIN) of the Custom Center, 62–1296459, as the taxpayer's identification number. It did not include the EIN for H & K, Inc.

The mailing matrix filed with the case did not include the address of the United States Attorney's office or the address of any IRS office. On February 13, 1992, that matrix was amended to include the IRS's Special Procedures Branch in Nashville and the address of the Memphis Service Center. On February 13, 1992, the clerk mailed to all creditors and other parties in interest a "Notice of Commencement of Case under Chapter 7 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates." This notice was received by Special Procedures on February 24, 1992. The notice's caption identified the debtor as "In re H & K, Inc., 62–1296459, fdba the Custom Center, Inc., fdba Chattanooga Custom Center, Inc., fdba The Custom Shop, Inc., fdba Custom Center Transportation, Inc., fdba M & J Manufacturing Corp."

The trustee alleges that he sent a letter to Special Procedures in Nashville on February 18, 1992, advising the IRS that H & K, Inc., and subsidiaries, including the Custom Center, had filed a Chapter 7 petition and demanding that the IRS remit the tentative tax refund to him. Special Procedures has no record of receiving a letter from the trustee dated February 18, 1992.

On February 27, 1992, the trustee filed a motion for a show cause order directed to the entities listed as debtors on the bankruptcy petition. The trustee wanted all the debtors listed in the petition but one to be dismissed

from the bankruptcy case, or if the listed debtors could prove that they should all remain in one bankruptcy case, the trustee wanted all the bankruptcy estates consolidated. The court granted the motion and set the show cause hearing for March 12, 1992.

On February 28, 1992, Special Procedures opened its case file under the name of H & K, Inc. When Special Procedures receives notice of commencement of a bankruptcy case, a clerk for Special Procedures will request a transcript of the account information for the entities involved in the bankruptcy. The clerk uses the transcript to determine whether tax liabilities are owed to the IRS. In this case, the research took additional time because five entities were listed, but only one EIN provided, and the EIN provided was not that of the principal debtor, H & K., Inc.

During the week beginning March 8, 1992, an employee at the Service Center "input" the tax refunds into the Service's computers. On March 16, 1992, the IRS issued a Notice of Intent to Levy to Custom Center. The tax refunds were posted to Custom Center's account during the week of March 22, 1992. On March 23, 1992, the IRS sent notices to Custom Center indicating that the tentative refunds had been applied against various Custom Center FICA and FUTA tax obligations.

On March 20, 1992, an agreed order was filed with this court. The order provided for the deletion of all of the entities from this case with the exception of the Custom Center, Inc., fka Chattanooga Custom Center, Inc.

During the week beginning March 29, 1992, the IRS input "bankruptcy freeze codes" to prevent collection activities in violation of the automatic stay for H & K, Inc. and the Custom Center, Inc. The IRS posted the freeze codes during the week beginning March 29, 1992.

On March 31, 1992, the trustee sent a letter to the IRS demanding that the IRS immediately reverse the setoffs and remit the tax refund to him. This letter correctly identified the Custom Center, Inc., as the debtor, but it was mailed to the Service

Center in Memphis. Special Procedures did not receive the letter until May 14, 1992.

On May 28, 1992 the IRS first discussed the trustee's letter with its legal counsel. On that date, upon advice of counsel, the IRS sent a Request for Adjustment (Form 3870(c)) to the Memphis Service Center requesting that the setoff be reversed and the refunds frozen. On May 29, 1992, the IRS informed the trustee that the setoffs had been reversed, and that the IRS would not remit the refunds to him.

On June 4, 1992, the IRS filed a proof of claim for unpaid withholding and unemployment taxes for 1991. The claim includes interest and penalties for failure to pay the taxes on time. The claim is broken down into a priority claim of $113,812.37 and a nonpriority claim of $20,908.05. The proof of claim did not indicate that the claims against the Custom Center were subject to setoff or were secured by the tax refunds that the IRS had frozen.

On June 11, 1992, the trustee filed the complaint that began this proceeding. On June 17, 1992, a summons was issued with respect thereto, and process served on the IRS. The United States Attorney filed a motion to lift stay in order to set off the tax refunds on June 23, 1992. The parties later agreed to consolidate the lift-stay motion into the adversary proceeding.

## DISCUSSION

I. *The IRS's arguments against paying the tentative refund to the trustee*

A. To the extent the IRS must credit a quickie refund against taxes owed by the taxpayer, the quickie refund is not a debt to the taxpayer.

■ This requires an explanation of the "quickie refund" procedure. A taxpayer with a net operating loss for one year can decrease its taxes for an earlier tax year by carrying the loss back to the earlier tax year. In the quickie refund procedure, the taxpayer can obtain a "tentative" tax decrease or refund. The taxpayer files an application. The IRS has a 90–day period to decide whether to allow the carryback. During the

90 days the IRS will make only a limited review of the application. It looks for omissions or errors in computation. If the IRS finds such errors and concludes that they cannot be corrected within the 90 days, it will deny the carryback. Otherwise, the IRS will allow the carryback. 34 Am.Jur.2d *Federal Taxation* ¶ 9631 & 9632 (1993); 26 U.S.C.A. § 6411(a) & (b) (West 1989).

Allowing the carryback results in a tax decrease for the earlier tax year. If the taxpayer has paid the tax for the earlier year, then it appears that the IRS owes a debt to the taxpayer for the tax decrease. The IRS will first credit the tax decrease against taxes owed to the IRS. 34 Am.Jur.2d *Federal Taxation* ¶ 9632 (1993); 26 U.S.C.A. § 6411(b) (West 1989). If this does not use up all the tax decrease, then the IRS will refund the balance to the taxpayer. 34 Am. Jur.2d *Federal Taxation* ¶ 9632 & 9635 (1993).

After the IRS allows the carryback, it can do a follow-up audit of the application and the tax return for the year of the net operating loss. If the IRS determines that the carryback should not have been allowed, it will revoke the carryback. Revoking the carryback gives the IRS a claim for the earlier tax decrease. 34 Am.Jur.2d *Federal Taxation* ¶ 9633 (1993).

Usually "refund" means the amount the IRS must refund to the taxpayer after it has credited the tax decrease against taxes owed to the IRS. 26 U.S.C.A. §§ 6402 & 6411 (West 1989 & Supp.1993); *Security Pacific Nat. Bank v. United States (In re Siebert Trailers, Inc.),* 132 B.R. 37 (Bankr.E.D.Calif.1991). In this situation, however, the tax decrease is commonly called a "quickie refund." The court thinks that it is easier to understand a quickie refund being credited or set off against other taxes. The court will generally use "quickie refund" to mean the tax decrease, except when a distinction needs to be made.

The IRS can argue that it owes a debt to the Custom Center only for the amount it can refund, not for the amount that must be credited against taxes owed to the IRS. 26

U.S.C.A. § 6411(b) (West 1989); *Pettibone Corp. v. United States (In re Pettibone Corp.),* 151 B.R. 156, 23 Bankr.Ct.Dec. 1384 (Bankr.N.D.Ill.1992) *aff'd* 161 B.R. 960 (N.D.Ill.1993) [1]; *Security Pacific Nat. Bank v. United States (In re Siebert Trailers, Inc.),* 132 B.R. 37 (Bankr.E.D.Calif.1991). This amounts to treating the situation as involving recoupment instead of setoff. The court does not agree.

The tax statute contains two sentences dealing with crediting a quickie refund against other tax debts. 26 U.S.C.A. § 6411(b) (West 1989). The next-to-last sentence is a special provision. It provides that the tax decrease shall be credited against (1) any unpaid amount of the tax that was decreased and (2) any unsatisfied tax for which the taxpayer obtained a payment extension in anticipation of the net operating loss carryback. The last sentence is a general provision. It says that the remainder of the tax decrease shall, within the 90–day period, be credited against any tax then due from the taxpayer or be refunded to the taxpayer.

The next-to-last sentence might involve recoupment, but it apparently does not apply. The court will treat the case as dealing with the general provision in the last sentence. The last sentence treats the quickie refund as a debt from the IRS to the taxpayer. It requires the IRS to credit the tax decrease against taxes owed to the IRS and to refund the balance, if any, to the taxpayer. The amount that must be refunded to the taxpayer is, in effect, a debt to the taxpayer. The amount that must be credited against taxes should also be treated as a debt to the taxpayer; otherwise there would be nothing to credit against the taxes.

Revoking the quickie refund may be treated as reviving the IRS's claim for the taxes that the refund was credited against, instead of giving the IRS a new claim for a return of the quickie refund. *Blansett v. United States,* 283 F.2d 474 (8th Cir.1960). This does not mean that a quickie refund is only a preliminary accounting entry, and not a debt, to the extent it must be credited against taxes owed to the IRS.

1. The district court disagreed with the bankrupt-  cy court on this point.

The court holds that the tax decrease or quickie refund is a debt from the IRS to the Custom Center *unless* the Custom Center's bankruptcy somehow undid the normal rules. This brings the court to the next argument.

B. Even if the IRS would normally owe a debt to the Custom Center for the quickie refund, it should be allowed to do a complete audit before deciding whether it owes any refund.

The court has a difficult time understanding exactly what the parties are arguing. The trustee could be arguing that the Custom Center's bankruptcy made the quickie refund irrevocable, and as a result, it must be paid to him to the extent it cannot be set off. If an audit would show that the Custom Center was not entitled to the refund, that is simply too bad for the IRS. The IRS cannot get back the taxes paid to the trustee or have a claim in the bankruptcy case for the taxes that were set off against the refund. The IRS will lose those taxes. The court has not found any bankruptcy or tax statutes to support this result. The court cannot believe that Congress would set up a system like this. This leaves two ways of dealing with the situation.

First, the IRS must pay the quickie refund to the bankruptcy estate, and if it later revokes or reduces the quickie refund, it will have a claim in the bankruptcy case; the issue is whether the claim will be a priority claim, and if so, what level of priority. In this situation, the quickie refund will be available to pay at least administrative expenses in the bankruptcy case.

Second, the IRS need not pay the quickie refund to the bankruptcy estate or set it off against taxes owed by the bankrupt debtor. The IRS can go ahead with the follow-up audit. The bankruptcy trustee can contest whatever decision the IRS makes. The IRS will not owe the quickie refund; it will not owe any refund until a final decision that it owes a refund. The quickie refund will not be available to pay any claims or administrative expenses in the bankruptcy case.

The IRS wanted the law changed so that the second option would be the law. *Bankruptcy Reform Act: Hearings on S. 235 be-*

*fore the Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary,* 94th Cong., 2d Sess. (1976) (Letter dated May 19, 1976 from Donald C. Alexander, Commissioner, Internal Revenue Service); *Bankruptcy Reform Act: Hearings on S. 2266 before the Subcomm. on Taxation & Debt Management of the Senate Comm. on Finance,* 95th Cong., 2d Sess. (1978) (Letter dated Aug. 7, 1978 from Lipman Redman, Chairman, Section of Taxation, American Bar Ass'n).

Congress did not adopt the IRS's proposal, but it did pass Bankruptcy Code § 503(b)(1)(B)(ii):

After notice and a hearing, there shall be allowed administrative expenses ... including ... any tax ... attributable to an excessive allowance of a tentative carry-back adjustment that the estate received, whether the taxable year to which such adjustment relates ended before or after the commencement of the case

. . . .

11 U.S.C.A. § 503(b)(1)(B)(ii) (West 1993). The legislative history explains this statute as follows:

Taxes which the Internal Revenue Service may find due after giving the trustee a so-called "quickie" tax refund and later doing an audit of the refund are also payable as administrative expenses. The tax code permits the trustee of an estate which suffers a net operating loss to carry back the loss against an earlier profit year of the estate or of the debtor and to obtain a tentative refund for the earlier year, subject, however, to a later full audit of the loss which led to the refund. The bill, in effect, requires the Internal Revenue Service to issue a tentative refund to the trustee (whether the refund was applied for by the debtor or by the trustee), but if the refund later proves to have been erroneous in amount, the Service can request that the tax attributable to the erroneous refund be payable by the estate as an administrative expense.

S.Rep. No. 989, 95th Cong.2d Sess. 66 (1978).

Under § 503(b)(1)(B)(ii) the result would be closer to the first option: the IRS would

owe the quickie refund to the bankruptcy estate, and if it revoked or reduced the quickie refund after the follow-up audit, it would have a first priority administrative expense claim in the bankruptcy case.

The statute also gives rise to an argument that setoff must be disallowed. The court will deal with that issue later. The court cannot say for certain that § 503(b)(1)(B)(ii) applies to the facts of this case. The legislative history suggests that § 503(b)(1)(B)(ii) applies only when the quickie refund is based on the bankruptcy estate's post-petition losses. However, the statute might be given a broader interpretation, depending on the meaning of "received" by the bankruptcy estate. Whether the statute applies to the facts of this case probably depends on how it relates to the tax statutes that deal with bankruptcy cases. *See, e.g.,* 26 U.S.C.A. §§ 1398 & 1399 (West 1988). The parties have not addressed the issue. For the purpose of argument, the court will assume that § 503(b)(1)(B)(ii) is irrelevant to the facts in this case.

Since the Custom Center is in bankruptcy, the court could postpone payment or setoff of the quickie refund until a final decision on whether the Custom Center is entitled to any refund based on the net operating loss. This wouldn't solve the problem unless the court adopts the IRS's argument that it does not owe a debt for the quickie refund and will not owe any refund debt until it reaches a final decision, after an audit, that it owes a refund.

The IRS's argument makes sense to the court, but the court cannot find any support for it in the statutes. The court has assumed that § 503(b)(1)(B)(ii) does not apply, but it still suggests that the IRS's argument is wrong.

The IRS has not pointed out any statute that allows it to deny a quickie refund on the ground that the taxpayer filed the application after bankruptcy or filed bankruptcy during the IRS's time for ruling on the application. The IRS also has not pointed out any statute that allows it to reverse the quickie refund on the ground that the Custom Center filed bankruptcy shortly after the quickie refund was granted. The bankruptcy was afterward if the court says that the Custom Center was not in bankruptcy until March 20, when the court deleted the other corporations from the bankruptcy petition. The IRS makes that argument on question of whether it willfully violated the automatic stay.

The court will proceed as if the IRS owes a debt for the quickie refund but has the right to do a follow-up audit and may revoke the quickie refund.[2] The court is not concerned at this point with whether the automatic stay has any affect on the IRS's right to do the follow-up audit. The court also is not concerned with the nature of the IRS's claim if it revokes the quickie refund. The court will touch on that problem later, when it deals with § 503(b)(1)(B)(ii) again. The court's decision on these points makes the trustee's estoppel argument moot. This brings the court to the trustee's arguments against setoff.

## II. *The trustee's arguments against setoff*

### A. Failure to assert setoff in the proof of claim

■ The IRS's proof of claim provided "This claim is not subject to any setoff or counterclaim except $_____." The IRS did not fill in the blank. The trustee contends that the IRS waived setoff by failing to fill in the blank.[3]

The trustee is arguing for a highly technical rule, but the IRS has not argued that the trustee was playing "gotcha" as in *Scherling v. Chase Manhattan Bank (In re Tilston Roberts Corp.),* 75 B.R. 76, 79 (S.D.N.Y. 1987).

The trustee's argument is supported by the old case of *Brown v. Farmers Bank,* 6 Bush (69 Ky.) 198 (1869). The bank filed a

---

**2.** The trustee may be able to short circuit the process by using Bankruptcy Code § 505. 11 U.S.C.A. § 505 (West 1993).

**3.** The official form directs the creditor to file for the net amount due after setoff, even though the automatic stay bars setoff. A creditor might file the claim as secured up to the amount of the potential set-off, but that does not agree with the command to subtract the potential setoff. Thus, the official form will not explicitly assert setoff, but it may be revealed in the attached documents. Fed.R.Bankr.Proc. Official Form 10 (West Supp.1993); 11 U.S.C.A. § 362(a)(7) & § 506(a) (West 1993).

proof of claim for the full amount owed by the debtor without subtracting the positive balance in the debtor's bank account. The court held that this prevented the bank from setting off the bank account. The court based its decision on § 21 of the Bankruptcy Act of 1867:

> [N]o creditor proving his debt or claim shall be allowed to maintain any suit at law or in equity therefor against the bankrupt, but shall be deemed to have waived all right of action and suit against the bankrupt; and all proceedings already commenced or unsatisfied judgments already obtained thereon shall be deemed to be discharged and surrendered thereby.

*Brown v. Farmers Bank,* 6 Bush (69 Ky.) 198, 199 (1869).

The court reasoned that asserting setoff "was equivalent to the prosecution of an original suit upon the claims against the prohibition of the bankrupt law." *Brown v. Farmers Bank,* 6 Bush (69 Ky.) 198, 200 (1869), *accord Russell v. Owen,* 61 Mo. 185 (1875); *see* 4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 553.07 at 553–43 (15th ed. 1993).

Section 21 of the 1867 Act was essentially like § 524 of the present law. Section 524 enjoins a creditor from trying to collect a debt that was discharged in the debtor's bankruptcy. 11 U.S.C.A. § 524(a) (West 1993). However, this court has held that § 524 does not bar setoff. *In re Howell,* Bankr. No. 90–12046 (Bankr.E.D.Tenn. Aug. 29, 1991) (Judge Kelley); *see Blake v. Handy (In re Handy),* 41 B.R. 172, 10 Collier Bankr. Cas.2d 1370 (Bankr.E.D.Va.1984); *Davidovich v. Welton,* 901 F.2d 1533 (10th Cir.1990); *In re Cole,* 104 B.R. 736 (Bankr.D.Md.1989). Thus, the reasoning of *Brown v. Farmers Bank* does not support the same result under the current bankruptcy statutes.

If § 21 of the 1867 Act is compared to the automatic stay imposed by § 362 of the current law, the result is the same; the automatic stay only delays and does not completely bar setoff. 11 U.S.C.A. § 362(a)(7) & § 553(a) (West 1993); 4 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 553.05[2] (15th ed. 1993).

The bankruptcy statutes and the rules of procedure do not require a rule that a creditor waives setoff by failing to assert it in the original proof of claim. However, setoff can be denied on equitable grounds that would normally justify denying setoff. *DuVoisin v. Foster (In re Southern Industrial Banking Corp.),* 809 F.2d 329, 15 Bankr.Ct.Dec. 1011 (6th Cir.1987); *Brunswick Corp. v. Clements,* 424 F.2d 673 (6th Cir.1970), *cert. den.,* 400 U.S. 1010 & 1013, 91 S.Ct. 564 & 569, 27 L.Ed.2d 623 & 627 (1971); *Paris v. Transamerica Ins. Group (In re Buckley & Associates Ins., Inc.),* 78 B.R. 155 (E.D.Tenn.1987); *Phelan v. Phelan,* 43 Tenn.App. 376, 309 S.W.2d 387 (1956). The creditor's actions or failure to act during the bankruptcy case may give rise to equitable grounds for denying setoff.

Some courts have held that a creditor's failure to assert setoff in its original proof of claim does not justify denying setoff. The courts focused instead on the creditor's continued failure to assert the setoff while the administration of the bankruptcy case progressed. *In re Brockton Shoe Mfg., Inc.,* 8 F.Supp. 959 (D.Mass.1934); *In re Diplomat Electric, Inc.,* 361 F.Supp. 1163 (S.D.Fla. 1973), *aff'd* 499 F.2d 342 (5th Cir.1974); *In re Sound Emporium, Inc.,* 48 B.R. 1 (Bankr. W.D.Tex.1984) *aff'd,* 70 B.R. 22, 17 Collier Bankr.Cas.2d 253 (W.D.Tex.1987); *Southeast Bank v. Grant (In re Apex Int'l Management Serv., Inc.),* 155 B.R. 591 (Bankr. M.D.Fla.1993). *See also In re Industrial Associates, Inc.,* 155 F.Supp. 866 (E.D.Pa. 1957); *In re Gehrke,* 158 B.R. 465 (Bankr. N.D.Iowa 1993); *Edelsberg v. Thompson McKinnon Securities, Inc. (In re Edelsberg),* 101 B.R. 386 (Bankr.S.D.Fla.1989).

Some courts have allowed setoff after the creditor paid the bankruptcy trustee what it owed to the debtor. The courts reached this result under both the prior bankruptcy statutes and the current bankruptcy statutes. *Chassen v. United States,* 207 F.2d 83 (2d Cir.1953) *cert. den.,* 346 U.S. 923, 74 S.Ct. 309, 98 L.Ed. 416 (1954); *Union Nat. Bank v. McKey,* 102 F. 662 (7th Cir.1900); *In re Farmers' & Mechanics' Bank of Rochester,* 13 F. 361 (N.D.N.Y.1882); *Scherling v. Chase Manhattan Bank (In re Tilston Roberts Corp.),* 75 B.R. 76 (S.D.N.Y.1987); *Public Serv. Co. of New Hampshire v. New Hampshire Elec. Coop., Inc.,* 884 F.2d 11 (1st Cir. 1989).

These decisions cannot be squared with a hard and fast rule that a creditor waives setoff by failing to assert it in the creditor's original proof of claim.

Other cases declare that, as a general rule, a creditor waives setoff by failing to assert it in the creditor's original proof of claim. The courts, however, found exceptions to the rule or found other reasons for not applying the rule or found other facts to justify denying the setoff. *Tavormina v. ITT Commercial Finance Corp. (In re Aquasport, Inc.),* 115 B.R. 720, 20 Bankr.Ct.Dec. 1116 (Bankr. S.D.Fla.1990), *aff'd,* 155 B.R. 245 (S.D.Fla. 1992), *aff'd,* 985 F.2d 579 (11th Cir.1993) (table); *In re Northeastern Int'l Airways, Inc.,* 99 B.R. 487 (Bankr.S.D.Fla.1989); *Fisher v. Outlet Co. (In re Denby Stores, Inc.),* 86 B.R. 768 (Bankr.S.D.N.Y.1988); *In re Butler,* 61 B.R. 790 (Bankr.S.D.Fla.1986).

The trustee relies primarily on the *Britton* case. In *Britton* the court distinguished Chapter 7 liquidation cases from Chapter 11, 12, or 13 cases. The court adopted a strict rule for Chapter 11 and 12 cases: a creditor waives setoff by failing to assert it in an original proof of claim. The court reasoned that in a Chapter 11, 12 or 13 case the parties need to know earlier than in a Chapter 7 case whether the creditor claims a right of setoff. *In re Britton,* 83 B.R. 914, 920, 18 Collier Bankr.Cas.2d 702 (Bankr.E.D.N.C. 1988).[4]

Equitable grounds for denying setoff may arise more quickly in a Chapter 11, 12, or 13 case. *See In re Stephenson,* 84 B.R. 74 (Bankr.N.D.Tex.1988), *appeal dismissed* 155 B.R. 952 (N.D.Tex.1988); *Edelsberg v. Thompson McKinnon Securities, Inc. (In re Edelsberg),* 101 B.R. 386 (Bankr.S.D.Fla. 1989). However, the court doubts that the rule needs to be as strict as the rule adopted in *Britton.* In any event, the strict rule adopted by the court in *Britton* is not relevant since this is a Chapter 7 case.

■ Moreover, the court concludes that there is no general rule that a creditor waives setoff by failing to assert it in the

creditor's original proof of claim. The general rule is more lenient. If the creditor does not assert setoff in a timely manner in the bankruptcy case, it may lose the right to setoff under general rules of equity. The court need not identify exactly which rule of equity may bar the setoff. It may be estoppel, laches, waiver, or election. One thing is certain, however. The creditor's failure to assert setoff in its original proof of claim should not automatically prevent setoff. The court will not deny setoff on the ground that the IRS failed to assert setoff in its original proof of claim. *See generally* 1 DAVID G. EPSTEIN, ET AL., BANKRUPTCY § 6–44 (West 1992).

**B. Debts owed in different capacities**

■ The trustee argues that setoff cannot be allowed because the Custom Center and the IRS owe their debts in different capacities. The trustee relies on *Begier v. I.R.S.,* 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). The Supreme Court held that the debtor's pre-petition payments on trust fund taxes were not preferential transfers to the IRS. Since each payment was held in trust for the IRS, it was not a transfer of the debtor's property that was available to pay any or all creditors. As a result, the payment was not a preferential transfer. The trustee argues that the Custom Center owes its debts as a trustee, but the IRS's debt for the refund is not a debt to the trust.

The courts have regularly denied setoff between the beneficiary and the trustee of a trust. In a typical case the beneficiary owes a debt to the trustee personally—not to the trustee for the benefit of the trust. The trustee cannot collect the beneficiary's debt to him personally by seizing property in the trust. That would be wrongful conversion of the trust property to the trustee's personal use. The same rule applies if the trustee wants to set off his own debt to the trust against the beneficiary's debt to him personally. If the trustee did this, he would be taking the trust's property, its claim against him, to collect the beneficiary's debt to him personally. *See, e.g., Brunswick Corp. v.*

**4.** The court criticized *Sound Emporium* as allowing an amendment to a claim to revive a right of setoff that was barred on equitable grounds, but *Sound Emporium* held that the setoff was not

barred on equitable grounds. *In re Sound Emporium, Inc.,* 48 B.R. 1 (Bankr.W.D.Tex.1984) *aff'd* 70 B.R. 22 (W.D.Tex.1987).

*Clements,* 424 F.2d 673 (6th Cir.1973); *Beckett v. Air Line Pilots Ass'n,* 995 F.2d 280 (D.C.Cir.1993); *In re Lykens Hosiery Mills, Inc.,* 141 F.Supp. 891 (S.D.N.Y.1956).

Saying that setoff must be denied in the typical case because the debts are owed in different capacities does not explain the result. The explanation depends on why the different capacities make a difference to the right of setoff. Setoff is denied because it would be a violation of the trust by the trustee.

This is not a typical case. The problem may be easier to explain by example. The beneficiary owes a $2,000 debt to the trustee personally. The beneficiary is entitled to an immediate payment from the trust of $5,000, but the trustee cannot pay it because he has converted the trust property to his own use. The trustee is liable to the beneficiary for the $5,000. The law does not require the beneficiary to put what he collects from the trustee back into the trust. That would not make sense because the trust would be required to pay it back to the beneficiary immediately. RESTATEMENT (SECOND) TRUSTS § 198 (Rev. ed. 1959); *see, e.g., Jefferson Nat. Bank v. Central Nat. Bank,* 700 F.2d 1143 (7th Cir. 1983); *Ramsey v. Ramsey,* 351 Pa. 413, 41 A.2d 559 (1945). The trustee in effect owes the money to the beneficiary, not to the trust.

The facts in this case are essentially the same. The IRS had an immediate right to payment of the trust fund taxes, but the Custom Center failed to pay. The IRS can keep any money collected from the Custom Center; the money need not be put into the nonexistent trust or passed through the possession of the Custom Center or its successor as trustee.

The court does not see any reason for denying setoff by the IRS in this situation, even assuming the debts are owed in different capacities. The beneficiary (the IRS) should be able to collect from the trustee (the Custom Center) by setting off its debt to the trustee. *Ducker v. Lohrey,* 33 B.R. 973, 9 Collier Bankr.Cas.2d 789 (Bankr.S.D.Ohio 1983). Allowing setoff will not violate the trust. Indeed, it will fulfil the purpose of the trust.

Furthermore, denying setoff would penalize the beneficiary, the IRS, and allow the Custom Center's other creditors to benefit, probably for the second time, from the Custom Center's failure to perform its duties as trustee.

The trustee's argument can be rejected on another ground. The tax statutes make the Custom Center liable to the IRS for the trust fund taxes in two capacities, as trustee and personally. 26 U.S.C.A. §§ 3102, 3403 & 7501 (West 1989 & Supp.1993). Since the Custom Center and the IRS owe the debts to each other in the same capacity, setoff can be allowed.

Finally, setoff cannot be denied on the theory that it would violate the rights of the Custom Center's employees as beneficiaries of the trust (assuming they were also beneficiaries). *See, e.g., American Training Services, Inc. v. Commerce Union Bank,* 415 F.Supp. 1101 (M.D.Tenn.1976) *aff'd* 612 F.2d 580 (6th Cir.1979); *Tavormina v. Merchants Bank (In re Gillett),* 55 B.R. 675, 13 Bankr. Ct.Dec. 1101 (Bankr.S.D.Fla.1985).

In summary, the court rejects the trustee's argument that setoff must be denied because the debts are owed in different capacities.

C.  Violation of the automatic stay

■ The trustee argues that setoff should be denied because the IRS set off the debts after bankruptcy in violation of the automatic stay. Some courts have said that setoff in violation of the automatic stay may justify denying setoff. *Charter Crude Oil Co. v. Exxon Co., U.S.A. (In re Charter Co.),* 103 B.R. 302 (M.D.Fla.1989) *rev'd on other grounds,* 913 F.2d 1575 (11th Cir.1990); *Rooster, Inc. v. Raphael Roy, S.R.L. (In re Rooster, Inc.),* 127 B.R. 560, 24 Collier Bankr.Cas.2d 1940 (Bankr.E.D.Pa.1991).

The court doubts that violating the automatic stay is enough by itself to bar setoff on equitable grounds. *Houdashell v. Missouri Public Serv. Co. (In re Houdashell),* 7 B.R. 901, 7 Bankr.Ct.Dec. 90 (Bankr.W.D.Mo. 1981); *see also Chase Nat. Bank v. Lyford,* 147 F.2d 273, note 7 (2d Cir.1945); 1 DAVID G. EPSTEIN, ET AL., BANKRUPTCY § 6–43 at 696–97 (West 1992). In any event, the IRS's violation of the automatic stay does not justify denying setoff.

The trustee alleges that he sent Special Procedures a letter on February 18 notifying

it that the Custom Center was in bankruptcy and demanding payment of any tax refunds. The IRS says that it has no record of receiving this letter. The trustee says that this does not amount to denying that it received the letter. The court disagrees. Since the IRS denies receiving the letter, the court cannot presume that it was received by Special Procedures. *Bratton v. Yoder Co. (In re Yoder Co.)*, 758 F.2d 1114 (6th Cir.1985).

The court will not deny setoff simply because the IRS put the freeze codes into its computer too late to stop the setoff. In any organization as large as the IRS there will be bureaucratic delay and confusion. The court sees little harm caused by the IRS's setoff in violation of the automatic stay. The trustee was required to write a letter demanding that the setoff be reversed. The trustee mistakenly sent the letter to the Service Center in Memphis, and that caused a long delay in getting the setoff reversed. The IRS reversed the setoff soon after the letter finally reached Special Procedures in Nashville. The court doubts that the trustee brought this suit as a result of the IRS's setoff in violation of the automatic stay. It may have added to his arguments, but the trustee is simply trying to recover the tax refund for the benefit of the bankruptcy estate. He is using all the arguments he can find to prevent the IRS from keeping the refund.

The trustee may be entitled to other relief from the IRS, but that question is not before the court at the moment. The IRS's violation of the automatic stay does not justify denying setoff. *In re Rush Hampton Industries, Inc.*, 159 B.R. 343 (Bankr.M.D.Fla. 1993).

Another question concerns the IRS's freeze on the refund. A similar problem occurs with bank accounts. After the depositor's bankruptcy, the bank does not credit the account against the depositor's debt to the bank. But the bank refuses to pay the account to the bankruptcy trustee. The courts have generally held that this "freeze" is not a violation of the automatic stay. 1 David G. Epstein, et al., Bankruptcy § 6–43 at 698–99 (West 1992).

Even if the IRS's freeze violated the automatic stay, the court thinks that it does not justify denying setoff. The freeze simply maintained the status quo. Requiring the IRS to pay the refund to the trustee before the court decides the setoff question could cause needless shuffling of the money back and forth between the IRS and the trustee.

### III. *An argument based on § 503(b)(1)(B)(ii)*

Section 503(b)(1)(B)(ii) gives rise to an argument that the quickie refund cannot be set off against pre-petition tax debts to the IRS. The argument goes as follows.

Suppose the IRS grants a quickie refund to the bankruptcy estate. The court allows the IRS to set the refund off against pre-petition taxes and pay only the balance to the bankruptcy trustee. The IRS revokes the refund after doing the follow-up audit. The IRS will have a claim for the amount of the quickie refund. Section 503(b)(1)(B)(ii) provides that the claim will be an administrative expense. Administrative expenses are post-petition expenses of administering the bankruptcy estate. 11 U.S.C.A. § 503(b)(1)(B)(ii) (West 1993). Administrative expenses are first priority claims, which means they are paid ahead of all other unsecured claims. On the other hand, pre-petition tax claims have seventh priority at best. 11 U.S.C.A. § 507(a) (West 1993).

Section 503(b)(1)(B)(ii) says that the administrative expense claim will include not only the amount paid to the bankruptcy estate but also the amount set off against pre-petition taxes. Thus, the statute will convert the IRS's claim for the pre-petition taxes from seventh priority to first priority as an administrative expense.

Administrative expense priority is not justified for the amount of a quickie refund that was set off against pre-petition taxes. The pre-petition taxes were a claim in the bankruptcy case. The IRS could have collected them from the debtor only by pursuing its claim in the bankruptcy case. The delay during the bankruptcy case, while the IRS did the follow-up audit, should not have affected the IRS's ability to collect the pre-petition taxes as a claim in the bankruptcy case. The delay does not justify administrative expense priority for the part of the

320

quickie refund that was set off against pre-petition taxes.

The way to avoid this problem is to hold that § 503(b)(1)(B)(ii) requires the IRS to pay the quickie refund to the bankruptcy estate without setting off any pre-petition tax debts. If the quickie refund must be paid to' the bankruptcy estate, then it makes sense to give administrative expense priority to the claim the IRS will have if it subsequently revokes the refund. The IRS will have a post-petition claim for money paid to the bankruptcy estate.

There are several finer points that can be added to make the argument more convincing, but there are also several counter arguments. Indeed, the argument suggests that § 503(b)(1)(B)(ii) does not apply.

Neither party has briefed the questions raised by § 503(b)(1)(B)(ii). The court will order the parties to brief the question within a short time. Pending a decision, the court cannot allow setoff. However, the court will not order the IRS to pay the quickie refund to the bankruptcy trustee. The court will grant partial summary judgment on the issues decided.

· The court will enter an order. This memorandum is the court's findings of fact and conclusions of law. FED.R.BANKR.PROC. 7052 (West 1984).