CHURCH OF CHRIST *v.* MCDONALD *et al.*

(*Jackson,* April Term, 1943.)

Opinion filed May 29, 1943.

MALCOLM C. HILL, of Sparta, and WESLEY P. FLATT, of Cookeville, for appellant.

WORTH BRYANT and JOHN HOLLADAY, both of Cookeville, for appellee.

MR. JUSTICE NEIL delivered the opinion of the Court.

Jeremiah Hales died in Putnam County on October 29, 1935, leaving an estate valued at approximately $16,000. In his will, which was probated on November 7, 1935, he gave ten dollars to each of his two daughters "for love and affection" and the residue to the Church of Christ. D. C. Wilhite and J. M. Hatfield were named executors and authorized to administer the estate without bond. The two daughters, Nancy Ann and Mary Elizabeth, who received the token gift above mentioned, were the only heirs at law of the testator. Nancy Ann was married to I. B. McDonald, and Mary Elizabeth was married to John M. Lee.

Soon after the will was filed for probate, the heirs filed a suit in the County Court contesting the said will. Thereupon the executors filed a bill in the Chancery Court seeking a construction of the will. All the heirs of the testator were made parties defendant. The Church of Christ became a party to the cause by filing an intervening petition. While this suit was pending, I. B. McDonald

and John M. Lee approached the executors and other members of the Church (the executors were officers of the Church) with a view of effecting a compromise. After several conferences, the following agreement, which was reduced to writing and signed by the parties, was reached:

"To the Honorable D. C. Wilhite and J. M. Hatfield, Executors of the will of Jeremiah Hales, deceased:

"Nancy McDonald, Ernest Lee and Howard Lee, the daughter and grandsons of Jeremiah Hales, agree to accept, in settlement of their interest in the estate of the said Jeremiah Hales, the sum of Eight Thousand ($8,-000.00) Dollars, and to be included, as a part of the Eight Thousand ($8,000.00) Dollars, are two notes on John Lee, with accrued interest, and if this proposition is accepted by said executors, this amount will be received and accepted in full and final settlement of all of their claims, demand and interest in and to said estate.

"This the 23rd day of March, 1936.

"Nancy McDonald,
"Ernest Lee,
"Howard Lee,
"By: Worth Bryant,
"Attorney.

"The above set out proposition is accepted, subject to the approval of the Chancery Court of Putnam County, Tennessee. March 26th, 1936.

"D. C. Wilhite, Executor
"J. M. Hatfield, Executor."

This compromise was approved by the Chancellor and the will sustained. The will contest was abandoned. The decree, bearing upon the foregoing compromise, provides:

"D. C. Wilhite and J. M. Hatfield, Executors of the Will of Jeremiah Hales, deceased, are therefore hereby

ordered and directed to carry out the terms of said compromise agreement by delivering up to Hon. Worth Bryant, Attorney for said parties, the two notes of John M. Lee, mentioned in said compromise agreement, and by paying in cash a sum sufficient to amount to $8000.00, after the two John Lee notes have been charged against said sum. The receipt of the said Nancy Ann McDonald, Ernest Lee, and Howard Lee, and their attorney Worth Bryant, shall constitute a good and sufficient voucher to the executors of said will for the distribution of said sum of eight thousand dollars.''

Following the decree of the Court and payment of the money to the heirs of testator, I. B. McDonald brought suit against the executors of the will to recover $1,202 upon an alleged contract between himself and the testator for the support and maintenance of the latter. On the same day that McDonald brought his suit, John M. Lee sued the executors to recover $3,042 for similar services.

The executors pleaded estoppel in both cases, alleging, in substance, that both McDonald and Lee had acted as agents and advisors of their respective wives and children in procuring the aforesaid compromise agreement; that in making said settlement they wilfully and designedly concealed their claims, and that the executors were deceived and misled by their conduct; that the said compromise was entered into under the belief that all claims against the estate were being settled.

When the McDonald suit was tried in the Circuit Court, this plea was ordered stricken by the trial judge on motion of plaintiff's counsel. There was a judgment entered in favor of plaintiff and the executors appealed. While the said judgment was affirmed, and *certiorari* denied by this Court, it was said in a *per curiam* opinion:

"There are a number of cases in the books which hold that a creditor of an estate by his dealings with heirs, legatees and distributees may estop himself from bringing forward a claim against the estate to the detriment of the other parties. It may be that the plaintiff in this case, in procuring the compromise for his wife, and in concealing his own claim during negotiations with the Church of Christ, the residuary legatee, has put the Church in a position where it can invoke an estoppel against him. This we do not decide, but file this memorandum to avoid the appearance of having sanctioned the contrary view, should such question be presented in future litigation."

The present suit was instituted in the Chancery Court by the Church of Christ to enjoin McDonald from collecting his judgment and John M. Lee from prosecuting his suit against the executors, now pending in the Circuit Court. It is averred in the bill that "complainant consented to said decree upon the belief that there were no debts worth mention against the estate of said deceased"; that while defendants were active in procuring the compromise settlement, they at no time intimated that they had any claim against the estate; that "had complainant known or had notice of any such claims, it would not have consented to said decree." It is further averred that "said McDonald and Lee fraudulently withheld from the executors and from their counsel the fact that they had or would set up these large claims against the estate."

The defendants demurred to the bill upon several grounds, which was overruled by the Chancellor. Thereupon an answer was filed averring "that the Church of Christ is not a corporation and has no legal existence" and has no right to maintain this suit; that the decree

of the Court approving the will and the terms of the compromise agreement did not affect the right of creditors, and that the "duty of paying creditors was still imposed upon said executors, provided said will is valid." There is a general denial "that defendants made any false representations, or in anywise deceived complainant in the suit referred to."

The cause was heard by the Chancellor upon oral testimony as provided by the statute. There was a decree in favor of the defendants and an appeal taken to the Court of Appeals, where an order was entered sustaining the bill and reversing the decree of the lower court. *Certiorari* was granted and all questions raised in defendants' petition were fully presented in oral argument. The determinative question is, whether or not the defendants are estopped, by their conduct in procuring or effecting the compromise settlement, from prosecuting their respective claims against the executors of the estate of Jeremiah Hales.

Contention is made that the will is invalid and that the Church of Christ, being an unincorporated society or association, is without legal capacity to take under the will and therefore cannot maintain this suit. We think the defendants are not in a position to raise the question, since they are neither heirs nor distributees of the estate of Jeremiah Hales. Their claim rests solely upon the averment that they are creditors of the estate. If they have a valid claim, and are not estopped by their conduct, the validity of the will is immaterial.

In passing upon the question of equitable estoppel, it becomes necessary to review the evidence bearing upon the conduct of defendants McDonald and Lee, which complainants contend works an estoppel. The learned Chan-

cellor found from the facts that the defendants had not been guilty of any wilful or intentional deception and therefore were not estopped. The Court of Appeals took the contrary view.

The record clearly shows that the defendants were active in procuring the compromise agreement, which was later approved by the Chancellor and a decree entered accordingly. They were acting as agents of their respective wives, who were the sole heirs of the testator. Had the will been sustained, the Church of Christ would have received all of the estate. As a result of the compromise agreement, the heirs obtained half of said estate, or approximately $8,000, and the executors delivered up to John M. Lee two notes held by testator aggregating more than $3,000. His wife's share of the settlement of $4,000 was paid to her two children (she being deceased), less the total amount of these notes.

The Court of Appeals found the following facts to be established "without contradiction":

"(1) I. B. McDonald and John M. Lee told Bob Lee Maddux about their claim for services rendered to Jeremiah Hales, and urged these claims as a reason why Nancy Ann McDonald should get one-third of the estate, Ernest Lee and Howard Lee one-third, and the Church of Christ one-third.

"(2) Defendants submitted a proposition of settlement to Bob Lee Maddux and requested him to present that proposition to D. C. Wilhite, one of the Executors, whereby Nancy Ann McDonald would get one-third of the estate, Ernest Lee and Howard Lee would get one-third, and the Church of Christ would get one-third.

"(3) If defendants are allowed to collect the claims which they now make for services rendered Jeremiah

Hales practically the entire estate will be exhausted and the Church of Christ will get nothing.''

We think the testimony of I. B. McDonald clearly shows that in making the compromise agreement the defendants intentionally concealed from the Church and the executors the claims upon which they later brought suit. He denied that he ever so much as mentioned having a claim to his lawyer until after the settlement. The following revealing statement is found in his testimony:

''Really, to tell you what we had in mind was getting it all; that's what we started to do, because it belonged to the heirs, you know that.''

''Q. If you couldn't get it one way, you was going to get it another?

''A. Well, we was going to do the best we could about it. We taken a compromise and got what we had.''

It cannot be doubted that, if these defendants are permitted to collect their respective claims, they will acquire the entire estate regardless of the compromise agreement, which was the very thing they had in mind when they were negotiating for the settlement. Manifestly, the executors and the Church would not have agreed to the compromise if they had been given even an intimation that these claims would be made, because if the claims are paid the Church gets nothing.

It is earnestly contended by counsel for the defendants that the doctrine of estoppel cannot be invoked in the instant case because there is no privity between them as creditors of the estate and the beneficiaries under the will, and that their silence regarding their claims does not work an estoppel. Responding to this contention, we find nothing in the record upon which to base it. No one is here asserting a right or interest based upon any

privity of estate. The defendant McDonald and the personal representative of Lee are suing the estate of Jeremiah Hales upon an alleged contract for services rendered deceased, while complainant contends that they are are estopped from asserting a claim because of their conduct which amounted to a fraud upon the Church and the executors.

The grounds upon which the Chancellor dismissed the complainant's bill, that no intentional or wilful fraud is shown, is unsound. We think the weight of modern authority is that, even though no fraud is intended, yet one may be estopped from claiming property where by intentional concealment of facts he has induced another to act to his prejudice. It is unnecessary to state the well known essential elements which must exist which lie at the basis of the doctrine of equitable estoppel. Mr. Pomeroy's Equity Jurisprudence, Vol. 3, p. 189, says:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

The learned author further says:

"It is not absolutely necessary that the conduct mentioned in the first subdivision should be done with a fraudulent purpose or intent, or with an actual and fraudulent intention of deceiving the other party. The adoption of such an element as always essential would at once strike out some of the most familiar and best established in-

stances of equitable estoppel." Pomeroy's Eq. Juri, Vol. 3, pp. 193, 194.

The doctrine of estoppel is often spoken of as a branch of the law of fraud. This is true if and when "fraud" is used in the general sense of what is "inequitable" or "unjust"; but it is *not* accurate if by fraud is meant deceit. Bispham's Principles of Equity, 10th Ed., sec. 280, p. 479.

Mr. Chief Justice Perley, in the leading case of *Horn* v. *Cole*, 51 N. H., 287-289, 12 Am. Rep., 111, says:

"The doctrine has not in equity been limited to cases where there was an actual intention to deceive. . . . The general current of our decisions on the subject tends to a liberal application of the doctrine for the suppression of fraud and dishonesty, *and the promotion of justice and fair dealing.*" (Italics ours.)

See, also, *Rogers* v. *Colville,* 145 Tenn., 650, 661, 238 S. W., 80.

The doctrine of equitable estoppel is founded upon the soundest principles of justice and morality, rather than upon technical rules of law. The intentional concealment of the truth often operates as an estoppel. "If a man is silent when it is his duty to speak, he shall not be permitted to speak when it is his duty to be silent." Bispham Eq., 10th Ed., sec. 284. While one is not in duty bound under all circumstances to speak out, we hold that, where one's silence enables him to acquire an unfair advantage over another in the settlement of property rights, it is his duty to speak. The foregoing principle has often been applied. A man who holds himself out as a partner is estopped, as against those who have dealt on the faith of such holding out, from denying the partnership. Under the same head fall cases in which a party has been held

to be precluded from denying that he occupied a certain position by reason of his *having permitted himself to be held out to others as having occupied it. Towne* v. *Sparks,* 23 Neb., 142, 36 N. W., 375; *Bridger's Case* L. R., 9 Eq., 74; Washburn on Easements, 62, 63. See our own case of *Electric Light & Power Co.* v. *Bristol Gas, Electric Light & Power Co.,* 99 Tenn., 371, 42 S. W., 19, 21, wherein the Court held that one "will not be allowed to assert his lien to the prejudice of persons whom he has induced to believe that his debt has been satisfied, or that he will claim no lien and who, in that belief, have purchased that property on which the lien rests." The Court further held the right to invoke the doctrine "does not always rest on the intention of the party to be affected by it, but is dependent, rather, *upon the reasonable* or *legitimate* effect of his statement or *conduct* in the particular matter upon the course of [others]." (Italics ours.)

The term "conduct", when applied to a person in relation to the modern doctrine of· equitable estoppel, embraces not only ideas conveyed by words written or spoken and things actually done, but includes the silence of such person and his omission to act, as well. *Wampol* v. *Kountz,* 14 S. D., 334, 339, 85 N. W., 595, 86 Am. St. Rep., 765; footnote, 31 C. J. S., Estoppel, sec. 87, p. 305, quoting *Farr* v. *Semmler,* 24 S. D., 290, 123 N. W., 835, 838.

In *Tobias* v. *Josiah Morris & Co.,* 126 Ala., 535, 28 So., 517, 522, it was said: "Negligent silence may work an estoppel as effectually as an express representation. . . . So, too, acts or conduct, though nothing is said, if they are calculated to mislead, and do in fact mislead, will work an estoppel, notwithstanding there was no intention to do so."

98

See, also, *In re Grube's Will,* 169 Misc., 170, 7 N. Y. S. (2d), 194, 215, citing *Rothchild* v. *Title Guaranty & Trust Co.,* 204 N. Y., 458, 462, 97 N. E., 879, 41 L. R. A. (N. S.), 740.

 While the will of Jeremiah Hales was an unjust will, yet it was his will and he was disposing of his property. Moreover, its approval by the Chancery Court was with the written consent of his heirs. Considering the undisputed facts and circumstances surrounding the parties at the time this settlement was made and the authorities cited, we think it would be inequitable and unjust to allow defendants to prosecute their claims against the estate. To hold otherwise would be to allow the heirs of the testator to acquire half of the estate under the compromise agreement and the defendants, husbands of the testator's daughters, the residue by enforcing claims which were intentionally concealed from the Church and the executors.

The decree of the Court of Appeals is affirmed.