**R.J. BETTERTON MANAGEMENT SERVICES, INC., Plaintiff–Appellee,**

v.

**Charles W. WHITTEMORE, Sr., and Charles W. Whittemore, Jr., d/b/a Nashville Golf and Athletic Club, a partnership, Defendants–Appellants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 2, 1988.

Permission to Appeal Denied by Supreme Court April 3, 1989.

---

Hugh E. Green, Lebanon, for plaintiff-appellee.

Thomas W. Brothers, Nashville, for defendants-appellants.

## OPINION

CANTRELL, Judge.

This is an action for a breach of contract. The appellants assert that the trial judge erred in applying the doctrine of estoppel to them and in failing to find that the parties had reached an accord and satisfaction. The appellee claims that the trial judge erred in not awarding a larger judgment. We affirm the action of the trial judge.

In 1981, Charles W. Whittemore, Sr. and his son, Charles W. Whittemore, Jr., operating a partnership by the name of Nashville Golf and Athletic Club, sought to hold a seniors' golf tournament in the Nashville area. Mr. Robert J. Betterton was the president of R.J. Betterton Management Services, Inc., a New York corporation engaged in producing professional golf tournaments. In September of 1981, Mr. Betterton learned of the proposed tournament in Nashville and contacted Mr. Whittemore, Sr. to offer his services as the tournament director. Negotiations led to a proposal by Mr. Betterton in a letter dated November 10, 1981 to Mr. Whittemore, Sr. When Mr. Whittemore, Sr. rejected that proposal, Mr. Betterton submitted an alternative proposal. The parties failed to agree, however, and the negotiations came to an end in December of 1981. Another man continued as the tournament director.

In February of 1982, with the tournament just ninety days away and little progress having been made, the parties got back together. The parties disagree as to who called whom, but it is not disputed that they negotiated over the terms of an agreement and that Mr. Betterton eventually spent the better part of two months in Nashville working on the project.

On March 25, 1982, Mr. Betterton submitted a written contract to Mr. Whittemore, Sr. containing the terms to which Mr. Betterton understood the parties had agreed. These terms included a flat fee of $15,000 to be paid in installments, $5,000 on the execution of the agreement, and $2,000 on the first day of each month from April through August of 1982.

According to Mr. Betterton, Mr. Whittemore, Sr. said that he had signed the agreement; Mr. Whittemore, Sr. denied making such a statement to Mr. Betterton. Mr. Whittemore, Sr. did not sign the agreement. Nevertheless, Mr. Whittemore, Sr. paid Mr. Betterton $5,000 in two install-

ments, one on April 18, 1982 and another on May 28, 1982. In addition, Mr. Whittemore paid various expenses submitted by Mr. Betterton in accordance with the terms of the writing.

After it became obvious that the tournament could not be held in May of 1982, the parties secured the agreement of the Professional Golfer's Association to change the date to July 15, 1982. By June 12, the parties recognized that the attempt to stage the tournament was a failure and the event was cancelled.

On June 18, 1982, Mr. Betterton sent a bill for his fees and expenses. He asked for the remaining $10,000 of the base fee. Mr. Whittemore, Sr. mailed Mr. Betterton a check on August 5, 1982 covering only a portion of the expenses. The check stated on its face that it was for "payment on Nasvill [sic] Golf Senior Classic Tournament through May 1982." The letter accompanying the check included the following paragraph:

I know that this was a dissapointment [sic] to you also. But above all I can not ubderstand [sic] your billing me for the full fee that you wanted for the tournament. Bob, this is absolutely insulting.

Mr. Betterton endorsed the check, "Accepted in partial payment on account."

■ The trial judge found that Mr. Whittemore, Sr. was estopped from denying that the agreement sent to him by Mr. Betterton was the agreement between the parties. That finding, announced by the trial judge from the bench, is the basis for the first issue raised by the appellants. Relying on their interpretation of *Price v. Tennessee Products & Chemical Corp.*, 53 Tenn.App. 624, 385 S.W.2d 301 (1964) the appellants argue that the trial judge erroneously used the principle of estoppel to create a right and not merely to protect one. We cannot agree with the appellants' argument.

In *Price*, the plaintiff was seeking damages for the loss of the right to mine coal in a certain area, part of which was allegedly covered by a lease. The lease, however, did not describe the area with sufficient certainty to satisfy the statute of frauds. The court held that, under the circumstances, the plaintiff was seeking to create a right to damages as to an area not covered by the alleged agreement. *Price*, 53 Tenn.App. at 639–640, 385 S.W.2d at 308–309.

This case is not like *Price*. Here, the court found that Mr. Whittemore, Sr. was estopped from denying that he had assented to the terms of the agreement submitted to him by Mr. Betterton. Where the parties performed under the agreement for an extended period of time and Mr. Whittemore, Sr. made payments to Mr. Betterton conforming to the terms of the agreement, we think Mr. Whittemore, Sr. cannot deny that the parties had a meeting of the minds. The doctrine of estoppel prevents the inequity that would result from such a denial:

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded ... from asserting rights ... either of property, of contract, or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right...."

*Church of Christ v. McDonald*, 180 Tenn. 86, 95, 171 S.W.2d 817, 821 (1943) (quoting 3 S. Symons, *Pomeroy's Equity Jurisprudence* § 804, at 189 (5th ed. 1941)). *See also Baliles v. Cities Service Co.*, 578 S.W.2d 621 (Tenn.1979).

We think the trial judge properly applied the principles of estoppel in this case.

In their second issue, the appellants again raise the question of accord and satisfaction. Although we disposed of this issue on a prior appeal, 733 S.W.2d 880, the appellants raise it again because we now have a complete record of the facts presented at the trial. In the prior case, the trial judge dismissed the action at the close of the plaintiff's proof. After a review of the record, however, we have not found any facts bearing on this issue which were not considered on the prior appeal. Therefore, we find this issue to be without merit.

■ The appellee, R.J. Betterton Management Services, Inc. (Betterton),

raises an issue over the amount of the judgment awarded by the trial judge. Betterton asserts that it is entitled to $10,000 instead of the $4,000 awarded by the trial judge. It is not clear how the appellee arrived at that figure; the appellee's brief states that Betterton was to be compensated on a quantum meruit basis for the consulting services. We think that is an unusual position for the appellee to take since it insists that the parties were bound by a written agreement.

It is possible to arrive at the $10,000 figure under the terms of the agreement, which called for an initial fee of $15,000. Since only $5,000 had been paid, an argument could be made that $10,000 of the initial fee was still due. However, implicit in the trial judge's decision is a finding that Mr. Betterton did not fully perform his obligations under the contract. We cannot say that the evidence preponderates against that finding or the amount awarded to Mr. Betterton.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Williamson County for any further proceedings necessary. Tax the costs on appeal to the appellants.

TODD, P.J., and LEWIS, J., concur.