IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JUNE 21, 2001 Session

BRENDA GAIL HINTON a/k/a BRENDA STEPHENS GRAY v. CAREY
CHRISTOPHER STEPHENS

Direct Appeal from the Chancery Court for McNairy County
No. 7441; The Honorable Martha B. Brasfield, Chancellor

No. W2000-02727-COA-R3-CV - Filed October 4, 2001

This appeal arises from a dispute between relatives over a parcel of real property. Although the parties executed a contract which stated that the purchase price was due in one year, the parties disregarded the contract language for eleven years. The trial court ruled that the parties had acquiesced in the extension of the contract and that they were now estopped to deny the contract's validity. As a result, the trial court ordered that the home be sold as per the terms in the contract. For the following reasons, we affirm the judgment of the trial court.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ROBERT L. CHILDERS, SP. J., joined.

Gregory Allen Meyer, Corinth, MS, for Appellant

Terry Abernathy, Selmer, TN, for Appellee

OPINION

Facts and Procedural History

The parties in this case are Brenda Gail Hinton (Ms. Hinton), and Carey Christopher Stephens (Mr. Stephens).[1] In March of 1989, the parties entered into a contract whereby Mr. Stephens was to purchase real property owned by Ms. Hinton. The total sales price of the home in question was $22,500.00. The contract further stated that "the sum of $22,500 shall be due and payable one year from the date of this instrument. . . ." Mr. Stephens, the buyer, was to pay monthly

_____

[1] We note that the parties are related, as Ms. Hinton is Mr. Stephens' aunt.

installments to Ms. Hinton in the amount of $178.12[2] beginning in April of 1989. The contract also mandated that Mr. Stephens pay all of the property taxes and insurance due on the property during the one year period. Additionally, the contract stated that it embodied the entire agreement between the parties and that it could not be altered or amended except by a subsequent written agreement. Mr. Stephens made all of the interest payments during the one-year period, and he paid all the property taxes and insurance in compliance with the terms of the contract.

The one year period expired, and neither party approached the other about the contract. Mr. Stephens continued making the $178.12 interest payments for eleven years and Ms. Hinton continued to accept them without any objection. Mr. Stephens also continued to pay all of the property taxes and insurance during this time. The court found that the house was in bad condition when Mr. Stephens moved in 1989 and began to make repairs. During this eleven year period, Mr. Stephens made extensive repairs and upgrades to the subject property. Over the years, Mr. Stephens replaced the siding and the roof, and he landscaped the property. Additionally, Mr. Stephens made extensive repairs and upgrades to the interior of the house. Mr. Stephens submitted an exhibit alleging that he has spent $11,594.79 on the repairs and upgrades since he moved into the home in 1989.

It was established at trial that Ms. Hinton's mother lives across the street from the property in question and that Ms. Hinton visited her mother frequently. Mr. Stephens testified that Ms. Hinton visited his house from time to time and that she was aware of some of the repairs and renovations that he made. Ms. Hinton testified that she had only been in the house two or three times over the years. She admitted that she went into visit Mr. Stephens' daughter, and she saw the renovations that were made in the child's bedroom. Ms. Hinton also admitted that she knew that Mr. Stephens had replaced all of the siding on the home. Ms. Hinton knew about some of the repairs, but she stated that she had no idea about many of the repairs that Mr. Stephens made to the home. Mr. Stephens never asked Ms. Hinton if he could make any repairs to the property, and Ms. Hinton never told Mr. Stephens that he should not make any repairs to the property. Also, Ms. Hinton admitted that her ownership of the property had not cost her anything since Mr. Stephens' had been living there.

The trial court found that, notwithstanding any language in the contract to the contrary, the parties had acquiesced in the extension of the contract and that the parties were estopped to deny the contract's validity. The court further ordered that the house be sold to Mr. Stephens by August 11, 2000. Ms. Hinton appeals, and raises the following issue, as quoted from her brief, for our review:

I.      That it was manifest error and mistake of law for the Chancellor to find not with standing [sic] any language in the referenced Contract to the contrary, both parties fully acquiesced in the extension of the contract.

---

[2] The $178.12 monthly payment represented nine and one-half percent interest on the sum of $22,500.00.

## Standard of Review

When a civil action is heard by a trial judge sitting without a jury, our review of the matter is *de novo* on the record, accompanied by a presumption of correctness of the findings below. See Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988); TENN. R. APP. P. 13(d). We may not reverse the findings of fact made by the trial judge unless they are contrary to the preponderance of the evidence. See Jahn v. Jahn, 932 S.W.2d 939, 941 (Tenn. Ct. App. 1996). This presumption of correctness, however, does not attach to the trial judge's legal determinations or the trial court's conclusions that are based on undisputed facts. See NCNB Nat'l Bank v. Thrailkill, 856 S.W.2d 150, 153 (Tenn. Ct. App. 1993).

## Law and Analysis

Our sole issue for review is whether the trial court erred in finding that the parties acquiesced in the extension of the contract. Ms. Hinton argues that sections 47-50-112 (a) and (c) of the Tennessee Code control this case. Section 47-50-112(a) of the Tennessee Code states the following in relevant part: "[a]ll contracts . . . in writing and signed by the party to be bound . . . shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written. . . ." TENN. CODE ANN. § 47-50-112(a) (1995). Moreover, section 47-50-112(c) of the Tennessee Code states that "[i]f any . . . contract contains a provision to the effect that no waiver of any terms or provisions thereof shall be valid unless such waiver is in writing, no court shall give effect to any such waiver unless it is in writing." TENN. CODE ANN. § 47-50-112(c) (1995).

In the instant case, the contract at issue contained a provision that stated "[t]his contract expresses and states the entire contractual agreement between these parties, and this contract shall not be altered, amended or modified in any manner except by the subsequent written agreement signed by all parties." Ms. Hinton argues that due to the aforementioned code sections and the contract language, the trial court should have found that the contract embodied the true intentions of the parties and that no written amendment to the contract was ever made. However, the court found that "notwithstanding any language in the referenced Contract to the contrary, both of these parties have fully acquiesced in the extension of the Contract, and that the parties, especially the Defendant, are now estopped to assert or deny that the referenced Contract is not presently valid and enforceable. . . ."

Estoppel is an equitable doctrine which prevents a party from raising a claim or taking a legal position when her conduct with regard to that claim is contrary to her position. See Robby's Pancake House v. Martin, 21 B.R. 754, 758 (Bankr. E.D. Tenn. 1982). "Estoppel requires (1) words, acts, conduct, or acquiescence causing another to believe in the existence of a certain state of things; (2) wilfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." Id. "The doctrine of estoppel springs from the equities of the case. It is based upon the principles of morality, as well as of public policy, or expediency." 11 TENN. JUR. *Estoppel* § 4 (1995). We also note that an interest in real estate may be acquired by estoppel. See id. "Equitable estoppel in the modern sense arises from the

conduct of the party, using that word in its broadest meaning, as including his spoken or written words, his positive acts and his silence or negative omission to do anything." Id. at § 25. Moreover, we note that "the vital principle of equitable estoppel is that a person who by his language or conduct leads another to do what he would not otherwise have done may not subject such person to loss or injury by disappointing the expectations on which he acted." 31 C.J.S. *Estoppel and Waiver* § 63 (1996).

In Church of Christ v. McDonald, 171 S.W.2d 817 (Tenn. 1943), our supreme court discussed in detail the doctrine of estoppel. In discussing what conduct was applicable to estoppel, the court noted the following:

> It is not absolutely necessary that the conduct . . . should be done with a fraudulent purpose or intent, or with an actual and fraudulent intention of deceiving the other party. The adoption of such an element as always essential would at once strike out some of the most familiar and best established instances of equitable estoppel.

Id. at 821 (citations omitted).

We also note that "[e]quitable estoppel is not limited to a particular factual situation, nor is it subject to simple, hard and fast or fixed rules or rigid criteria. Whether or not the doctrine of equitable estoppel is applicable depends on the particular facts and circumstances of each case." 31 C.J.S. *Estoppel and Waiver* § 58 (1996).

"Acquiescence has been defined as conduct from which may be inferred assent. . . ." Id. at § 133. Acquiescence arises "where a person knows or ought to know that he is entitled to enforce his right or to impeach a transaction neglects to do so for such a time as would imply that he intended to waive or abandon his right." Id.

The facts of the instant case are very unique. Although the contract at issue clearly stated that "[t]he sum of $22,500.00 shall be due and payable one year from the date of this instrument," the parties did nothing at the end of the year. The parties simply continued for eleven more years, each without asking the other about the status of the contract. The proof at trial showed that Mr. Stephens spent $11,594.79 in repairs and upgrades to the home over the years.[3] While all of these repairs may not have been immediately necessary, the court found that there was no question that the house was in a state of major disrepair when Mr. Stephens first moved there. The proof also showed that while Ms. Hinton was not aware of all of the repairs to the home, she was certainly aware of some of the repairs. For example, she knew that Mr. Stephens had put new siding on the house, and it was evident that he had landscaped the grounds around the home. Ms. Hinton also admitted to going inside the home a few times and noticing repairs and cosmetic upgrades to the child's bedroom. Even though Ms. Hinton knew that Mr. Stephens was spending money on the home over and above

---

[3] We note that Mr. Stephens did the majority of the work on the home himself, and this figure does not include a charge for his own labor.

what was called for in the contract, she remained silent for eleven years. She never asserted her rights under the contract. Instead, she sat idly by while Mr. Stephens detrimentally relied on her silence by spending considerable monies and laboring to make a home for his family. As a result, due to the unique facts of the instant case, we agree with the trial court that the parties are estopped to deny that this is a valid contract, and that the parties fully acquiesced in the extension of the contract.

## Conclusion

Due to the foregoing, we affirm the judgment of the trial court. Costs on appeal are taxed to Ms. Hinton, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE