IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 22, 2008 Session

## WASHINGTON MUTUAL BANK, F.A. v. ORNL FEDERAL CREDIT UNION, ET AL.

**Appeal from the Chancery Court for Loudon County**
**No. 10642     Frank V. Williams III, Chancellor**

**No. E2007-02421-COA-R3-CV Filed June 24, 2008**

In this appeal, we determine the priority between two recorded deeds of trust. Homeowners entered into a line of credit with a credit union secured by a recorded deed of trust on the homeowners' home. The homeowners subsequently refinanced their home with a bank. The bank paid off the homeowners' debt to the credit union, and recorded its own deed of trust securing its loan. At that same time, the loan and deed of trust was assigned to a second bank. Despite the payoff of the homeowners' debt by the assignor bank, the first deed of trust to the credit union was never released, and the homeowners continued to draw on the line of credit. When the homeowners began having financial problems, the assignee bank discovered that the credit union had never released its deed of trust on the homeowners' property because of a provision in the deed of trust stating that its release was conditioned upon the borrower requesting the cancellation of the line of credit. When the homeowners defaulted on both loans, the question arose as to which party's deed of trust had priority. The trial court ruled in favor of the assignee bank on the basis that the credit union was equitably estopped from asserting its deed of trust because, at the time of payoff, the credit union did not follow its self-imposed practice of advising if any action other than payoff was required before release of the deed of trust. After careful review, we reverse because we conclude that the assignor bank had the means of discovering that payoff alone was insufficient to trigger the release of the deed of trust and because, under state statutory law, it had prior notice of all prerequisites to release the deed of trust as a result of the credit union's registration of such deed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; Cause Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Dan D. Rhea, Knoxville, Tennessee, for the appellant, ORNL Federal Credit Union.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the appellee, Washington Mutual Bank, F.A.

## OPINION

### I. Background

In April of 2001, David and Donna Lockett borrowed $100,000 from ORNL Federal Credit Union ("ORNL") under a home equity line of credit loan agreement which was secured by a deed of trust on their Loudon County home. ORNL filed its deed of trust in May of 2001 in the office of Register of Deeds for Loudon County.

In March of 2002, the Locketts refinanced their home with TNBank. They signed a promissory note for $127,000, secured by a deed of trust on the home. After receiving a title abstract on the property, TNBank's title company, Jackson Square Title Company ("Jackson Square"), through its agent, attorney Steven Seivers, faxed ORNL a request for a statement of the current payoff amount for the Locketts' debt to ORNL. ORNL faxed two responses; one pertaining to a loan designated "Loan #95", with a stated payoff amount of $98,418.43, and one pertaining to a loan designated "Loan #39", with a stated payoff amount of $2,050. After receiving this information, Jackson Square, on behalf of TNBank, issued two checks to ORNL in the stated payoff amounts, but never requested a release of ORNL's deed of trust. In response, on March 25, 2002, ORNL sent TNBank receipt vouchers showing that the loans had been paid in full. On that same date, TNBank assigned the Locketts' debt and the deed of trust to Washington Mutual Bank, F.A. ("Washington Mutual"), and on April 3, 2002, a deed of trust and assignment of same to Washington Mutual was recorded with the Register of Deeds for Loudon County.

Unbeknownst to Jackson Square, TNBank, and Washington Mutual, after receiving the monies paying off the Locketts' debt, ORNL did not release its deed of trust on the Locketts' home, and the home equity line of credit with ORNL remained open and available to the Locketts. Taking advantage of this source of funding, between April 18, 2002, and January 22, 2004, the Locketts borrowed an additional $95,887.87 from ORNL. Subsequently, Jackson Square and Washington Mutual discovered the further incurrence of debt to ORNL and the fact that ORNL had never released its deed of trust on the Locketts' home. Around the same time, the Locketts began defaulting on their loan payments to both ORNL and Washington Mutual, and it became apparent that these two entities had competing interests in the Locketts' home pursuant to their respective deeds of trust on such property. Although, by letters to ORNL, in February and June of 2004, Jackson Square's attorney requested that ORNL release its deed of trust, ORNL did not comply and began proceedings to foreclose on the home.[1]

On February 9, 2005, Washington Mutual filed a complaint against ORNL alleging, among other things, that ORNL "deliberately and wrongfully refused to release its Deed of Trust" and requested that ORNL be enjoined from foreclosing on the property and that Washington Mutual's deed of trust be granted first priority. Thereafter, the parties entered into an agreed order allowing

---

[1]The Locketts subsequently filed a bankruptcy petition and were granted a discharge of their debts. Although initially they were named as defendants in this case, they were later dismissed from the suit and are not parties to this appeal.

the foreclosure sale to proceed, and $108,293.09 realized from the sale was placed in escrow pending the trial court's decision as to the parties' rights pursuant to the deeds of trust.

Upon trial of the case, final judgment was entered in favor of the holder of the second recorded deed of trust, Washington Mutual. The trial court found that ORNL had adopted a practice of advising any party requesting a line of credit payoff as to what, if any, additional action would be required before the deed of trust would be released. Evidence was presented that ORNL failed to adhere to this standard of practice when it responded to Jackson Square's request for the payoff amounts for the Locketts' debt by failing to advise Jackson Square that the Locketts must also request that ORNL cancel the line of credit in order to bring about release of the deed of trust. The trial court further stated as follows:

> Equity regards as done that which should have been done. And what should have been done under these circumstances is for [ORNL's] deed of trust to have been released and to have not existed after the date that the loan was paid.

Following this rationale, the trial court held that ORNL's deed of trust was released and "null and void" after payoff of the Locketts' debt in March of 2002 and that Washington Mutual was entitled to the proceeds from the foreclosure sale of the Locketts' home as first lienholder, pursuant to its deed of trust. ORNL appeals this ruling.

## II. Issue

The issue we address in this case is whether the trial court erred in ruling that the recorded deed of trust of Washington Mutual, (assignee of TNBank) had priority over the first recorded deed of trust of ORNL because ORNL was equitably estopped from asserting its deed of trust as result of ORNL's failure to comply with its own company standard when, in responding to Jackson Square's payoff request, it failed to notify Jackson Square of additional action required for release of such deed of trust.

## III. Analysis

### A. Standard of Review

In a non-jury case such as this one, we review the record de novo with a presumption of correctness as to the trial court's determination of facts, and we must honor those findings unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law are reviewed de novo and are accorded no presumption of correctness. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

## B. Equitable Estoppel

We begin our analysis with the general premise that a deed of trust registered first has preference over a later filed deed of trust, unless the holder of the first-filed instrument had full notice of the pre-existing but later-filed instrument. Tenn. Code Ann. § 66-26-105. In this case, the notice exception is not applicable. The trial court determined that the second-filed deed of trust had priority based on the doctrine of equitable estoppel.

The Tennessee Supreme Court has restated the various elements that a plaintiff must establish in order to successfully invoke the doctrine of equitable estoppel as follows:

> The doctrine of equitable estoppel requires evidence of the following elements with respect to the party against whom estoppel is asserted:
>
> > (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.
>
> Equitable estoppel also requires the following elements with respect to the party asserting estoppel:
>
> > (1) *Lack* of knowledge and *of the means of knowledge of the truth as to the facts in question*; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

*Osborne v. Mountain Life Ins. Co.*, 130 S.W.3d 769, 774 (Tenn. 2004) (citations omitted) (emphasis added).

The trial court's estoppel ruling was based upon its finding that ORNL failed to follow its practice of advising a party requesting a loan payoff amount as to other actions that were required to ensure the release of any deed of trust securing the loan. We do not find that the evidence preponderates against this finding and note the testimony of ORNL employees that this was ORNL's practice and attorney Seivers' testimony that at the time of payoff, ORNL failed to advise of the necessity of any further action required to effect release its deed of trust. Were these the only circumstances shown by the evidence in this case, we would agree with the trial court's decision; however, as discussed hereinafter, other evidence compels us to conclude that Washington Mutual

failed to establish all of the elements required for equitable estoppel in that it failed to prove that Jackson Square and TNBank lacked "the means of knowledge of the truth as to the facts in question."

ORNL's revolving credit deed of trust, recorded in May of 2001, included the following provision, which explicitly states what was required of the Locketts in order to obtain a release of such deed of trust and includes the requirement that the Locketts request that the line of credit with ORNL be canceled, which request was never made:

> Release. This Deed of Trust secures a revolving line of credit and advances may be made, repaid, and remade from time to time, under the terms of the Credit Agreement. When Borrower (1) has paid all sums secured by this Deed of Trust *and (2) has requested that the revolving line of credit be canceled*, Lender shall release this Deed of Trust.

(Emphasis added).

We do not think it can reasonably be argued that Jackson Square and TNBank lacked the means of acquiring knowledge of the above provision setting forth the deed release requirements. From the time of its recordation, Jackson Square, TNBank and the latter's assignee, Washington Mutual, all had access to ORNL's deed of trust and the information it contained, as a matter of public record. In addition, the proof shows that prior to arranging for payoff of the Locketts' debt to ORNL, attorney Seivers received confirmation from a title attorney of ORNL's deed of trust against the Locketts' property. We believe that having been made aware of this fact, due diligence required that Jackson Square examine the contents of the deed of trust for any provisions setting forth what actions would be necessary for the deed's release. Jackson Square and TNBank should have been particularly alert to the possibility that ORNL's deed of trust might contain such a provision, given the fact that, as attested by attorney Seivers, TNBank's own deed of trust securing its loan to the Locketts and notarized by attorney Seviers, also included a release provision setting forth specific prerequisites to such deed's release.

Furthermore, as provided by Tennessee statutory law, when ORNL recorded its deed of trust in May of 2001, it thereby provided notice of the deed of trust and its contents to "all the world," which, of course, included Jackson Square, Washington Mutual, and TNBank. Tenn. Code Ann. § 66-26-102. At trial, the trial court stated that "[t]he fact that the information was out there lodged in a register of deeds office somewhere, certainly, in the absence of ORNL's self-imposed obligations, would have been enough to bind the title company and TNBank and Washington Mutual." We respectfully disagree that ORNL's failure, at the time of payoff, to follow its policy regarding notification of deed release prerequisites served to negate the fact that notice of such prerequisites had already been given as a result of ORNL's registration of its deed. In other words, notwithstanding any act or omission of ORNL alleged by Washington Mutual in this case, we do not believe it can reasonably be asserted that Jackson Square, Washington Mutual, and TNBank, did not,

5

after such act or omission, have information that, as a matter of statutory law, they were held to have had prior to such act or omission.

In its brief, Washington Mutual states that "[i]f a party breaches a duty by leading another to believe that the party's debt has been satisfied, the party will not be allowed to assert its lien to the prejudice of the other that has been mislead." In support of this statement, Washington Mutual cites the following language of the Tennessee Supreme Court in **Church of Christ v. McDonald**, 171 S.W.2d 817 (Tenn. 1943), quoting the Court's earlier ruling in **Bristol-Goodson Elec. Light & Power Co. v. Bristol Gas, E.L. & P. Co.**, 42 S.W. 19, 21 (Tenn. 1897):

> [O]ne "will not be allowed to assert his lien to the prejudice of persons whom he has induced to believe that his debt been satisfied, or that he will claim no lien and who, in that belief, have purchased that property on which the lien rests." The Court further held the right to invoke the doctrine "does not always rest on the intention of the party to be affected by it, but is dependent, rather, upon the reasonable or legitimate effect of his statement or conduct in the particular matter upon the course of [others]."

*McDonald*, 171 S.W.2d at 821 (citations omitted) (emphasis omitted).

Washington Mutual also notes the following additional language from **McDonald** for the proposition that failure to speak may also trigger an equitable estoppel:

> The term 'conduct', when applied to a person in relation to the modern doctrine of equitable estoppel, embraces not only ideas conveyed by words written or spoken and things actually done, but includes the silence of such person and his omission to act, as well.

*Id.*

Based upon our finding, in accordance with Tenn. Code Ann. § 66-26-102, that ORNL's registration of its deed of trust with its release provision constituted notice to all the world as to what would be required for release, we do not agree that the above cited language of our Supreme Court mandates equitable estoppel in the instant case. Given such notice, it cannot be said that ORNL induced any party to believe that it would claim no lien on the Locketts' home as a result of payoff alone, and the "reasonable effect" of such notice was that further action was necessary to obtain release of its deed of trust. Nor, given such notice, can it be said that ORNL was silent or omitted to act.

Washington Mutual also contends that the trial court's ruling is supported by our decision in **Bennett**, *et al. v. Trevecca Nazarene Univ.*, No. M2004-01287-COA-R3-CV, 2005 WL 2487979 (Tenn. Ct. App. M.S., filed Aug. 18, 2005), which was recently affirmed by the Tennessee Supreme

Court in ***Bennett, et al. v. Trevecca Nazarene Univ.***, 216 S.W.3d 293 (Tenn. 2007). Again, we must disagree.

In ***Bennett***, plaintiff electricians sued the defendant university for injuries they sustained in a high voltage electrical explosion that occurred while the plaintiffs were attempting to repair malfunctioning electrical equipment belonging to the defendant. The suit charged that the defendant was liable for the plaintiffs' injuries upon the allegation, among others, that before the plaintiffs began work, the defendant negligently understated the amount of voltage carried by such equipment. The trial court granted the defendant summary judgment based upon the "independent contractor rule" which provides that a premises owner is relieved of the duty of reasonable care to an independent contractor who is injured while making specific repairs called for in the work contract. We reversed the judgment of the trial court and held that although the defendant may not have had a duty to speak as to the amount of voltage in question, once the defendant chose to speak in that regard it assumed the duty of speaking truthfully, notwithstanding that, under the independent contractor's rule, the repair contract itself served to put the plaintiffs on notice of hazards such as the one that resulted in the plaintiffs' injuries:

> The duty of [defendant] in this case arose not from the contract but from the fact that it "chose to speak" as to a critical inquiry when it was under no duty to speak. Taking the evidence of [p]laintiffs as true, TNC knew that the power box was high voltage, yet informed [p]laintiffs that it was low voltage. Having assumed to speak, [defendant] was required to speak the truth and did not do so . . . . Defendant, having chosen [to] speak, was under this assumed duty; it did not fulfill the duty by providing false information to [p]laintiffs.

***Bennett***, 2005 WL 2487979 at *9.

Washington Mutual contends that ***Bennett*** *"supports reliance on estoppel due to ORNL's own self-imposed practice requiring ORNL to reveal what was necessary to close the revolving home equity line of credit account when a refinancing transaction occurred."*

We disagree that ***Bennett*** is analogous to the case at bar. In ***Bennett***, the plaintiffs' suit would have failed pursuant to the independent contractor's rule but for the fact that under the standard applicable in the review of a motion for summary judgment, the defendant in that case was found to have affirmatively and specifically misadvised the plaintiffs as to the amount of voltage, and therefore, the degree of hazard. In the instant case, neither at the time of payoff nor at any other time, did ORNL affirmatively misadvise Washington Mutual as to what action would be required before ORNL would release its deed of trust. On the contrary, unlike the defendant in ***Bennett,*** who gave the plaintiffs inaccurate information, ORNL in registering its deed of trust provided Washington Mutual with complete and accurate information as to the matter of inquiry. Had ORNL specifically stated that release of its deed of trust would require no action other than payoff of the underlying debt, the Court's ruling in ***Bennett*** would be relevant to a decision in the case before us.

However, ORNL did not do so and accordingly, Washington Mutual's argument is without merit.

### IV. Conclusion

For the reasons set forth in this opinion, the judgment of the trial court is reversed. Costs of appeal are assessed to the appellee, Washington Mutual Bank, F.A.

_____

SHARON G. LEE,  JUDGE